Elisabeth Holmes (OSB No. 120254)
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon  97440
Tel. (541) 870-7722 (No facsimile)
Email: eli@willametteriverkeeper.org

Bryan Telegin (OSB No. 105253)
Zachary K. Griefen (WSBA No. 48608)*
Bricklin & Newman LLP
1424 4th Avenue, Suite 500
Seattle, Washington  98101
Tel. (206) 264-8600
Facsimile (206) 264-9300
Emails: telegin@bnd-law.com and griefen@bnd-law.com
* *Pro hac application to be filed promptly*

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| WILLAMETTE RIVERKEEPER, an Oregon non-profit corporation,<br>        Plaintiff,<br><br>        vs.<br><br>CITY OF ALBANY, OREGON; ALBANY CITY MANAGER PETER TROEDSSON, INDIVIDUALLY AND IN HIS CAPACITY AS CITY MANAGER,<br>        Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Clean Water Act, 33 U.S.C. § 1251 *et seq.*) |

### STATEMENT OF THE CASE

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act, 33 U.S.C.

§ 1365, by Plaintiff Willamette Riverkeeper against the City of Albany, Oregon and

Albany City Manager Peter Troedsson, individually and in his capacity as City Manager

(collectively the "City" or "Defendants") to address violations of effluent standards and

limitations including unpermitted pollutant discharges from the City's small municipal separate storm sewer system ("MS4") and sanitary sewer system, located at approximately River Miles 117 to 120 on the Willamette River.

2.     The City's population exceeds 50,000 persons as determined by the 2010 decennial census, thereby requiring the City to apply for, obtain, and comply with the terms and conditions of Oregon's November 30, 2018 National Pollution Discharge Elimination System ("NPDES") MS4 Phase II General Permit (hereinafter the "MS4 General Permit"), or an Individual NPDES permit that covers discharges from its separated storm sewer system.

3.     The City's refusal to apply for, obtain, and comply with the terms and conditions of either the MS4 General Permit or an Individual NPDES permit for the City's MS4 system has resulted in unpermitted (and therefore illegal) discharges of pollutants to waters of the United States.

4.     The City has not developed and/or implemented a Stormwater Management Program with six minimum control measures as is required by the U.S. EPA regulations for MS4 systems.

5.     The City has old, antiquated, abandoned, unidentified, and/or undersized waste discharge system pipes which leak and cause unpermitted sewer overflows.

6.     The City is discharging and adding pollutants including raw sewage, bacteria, and other pollutants into waters of the United States, including the Willamette River, or its tributaries, forks, and/or connected waters.

7.     The City has added, is adding, and is likely to continue to add unpermitted overflow in excess of the emergency overflow limits set by, and during conditions not authorized by, the City's November 20, 2000 NPDES Waste Discharge Permit No. 102024 (the "NPDES

Waste Discharge Permit") into waters of the United States, including the Willamette River, or its tributaries, forks, and/or connected waters.

8.      The City's NPDES Waste Discharge Permit has been administratively extended for nearly twenty years.

9.      Waters of the United States adjacent or in close proximity to waste and stormwater pipes and outfalls that the City owns, operates, or controls receive the City's waste and unpermitted stormwater.

10.     Any addition of any pollutant from the City's MS4 system, its old, antiquated pipes, and emergency overflow outfalls (collectively hereinafter, the "discharges" or "additions") is not permitted under the Clean Water Act unless authorized by a NPDES permit. 33 U.S.C. § 1362(12); 33 U.S.C. § 1311(a); 33 U.S.C. § 1342.

11.     The discharges alleged herein are not authorized by the MS4 General Permit, an Individual Permit covering the City's MS4 system, or the City's NPDES Waste Discharge Permit.

12.     Each discharge violates 33 U.S.C. § 1311 and 33 U.S.C. § 1342.

13.     Unless the Court grants Plaintiff's requested relief, the City will continue to violate the Clean Water Act by discharging, from point sources, unpermitted stormwater, raw sewage, bacteria, and other pollutants, and excessive unpermitted overflows, into waters of the United States.

14.     Accordingly, Willamette Riverkeeper seeks declaratory judgment, injunctive relief, civil penalties, and an award of costs, including attorney and expert fees and other expenses incurred in bringing this action. 33 U.S.C. § 1365(d).

## JURISDICTION

15. This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331 (federal question). The relief requested is authorized pursuant to 33 U.S.C. §§ 1319, 1365(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

16. In compliance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135, on August 27, 2019, Willamette Riverkeeper gave its first notice of violations and of Willamette Riverkeeper's intent to file suit to Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Region 10 Administrator of the EPA, and the Director of the Department of Environmental Quality of the State of Oregon ("Oregon DEQ") (the "First Notice"). A true and correct copy of the First Notice and its attachments is attached hereto as Attachment A and all details and allegations contained therein are incorporated by reference in this Complaint.

17. In compliance with 33 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135, on January 31, 2020, Willamette Riverkeeper gave a second notice of additional violations alleged in this Complaint and of its intent to file suit to Defendants, the EPA, the Region 10 Administrator of the EPA, and the Oregon DEQ (the "Second Notice"). A true and correct copy of the Second Notice and its attachments is attached hereto as Attachment B. All details and allegations contained therein are incorporated by reference in this Complaint.

18. More than sixty days have passed since the Plaintiff mailed Defendants the First and Second Notices (collectively, the "Notice Letters"). The Clean Water Act violations complained of in the Notice Letters are of a continuing nature, ongoing, or reasonably likely to re-occur.

19.    Defendants remain in ongoing and continuous violation of the Clean Water Act.

20.    As of the filing of this Complaint, neither the EPA nor the Oregon DEQ has commenced or is diligently prosecuting an enforcement action to redress the violations alleged herein.

21.    Willamette Riverkeeper both resides and maintains its principal places of business in the District of Oregon. Willamette Riverkeeper maintains two offices in Oregon, located at 403 Southeast Caruthers Street, #101, Portland, Oregon 97214, and at 454 Willamette Street, Eugene, Oregon 97401.

22.    This action reflects an actual, present, and justiciable controversy between the parties.

23.    Willamette Riverkeeper's interests and the interests of its members and supporters will be adversely affected and irreparably injured if the City continues to violate the Clean Water Act as alleged herein.

24.    The requested relief will redress the actual, concrete injuries to Willamette Riverkeeper and its members and supporters caused by the City's failure to comply with duties mandated by the Clean Water Act, associated regulations, Oregon DEQ's municipal separate storm sewer system MS4 General Permit or Individual Permit terms and conditions, the Oregon DEQ NPDES Waste Discharge Permit terms and conditions, and Oregon's Water Pollution Control Laws.

## VENUE

25.    Venue is proper in this Court pursuant to 33 U.S.C § 1365(c)(1), because the City's municipal separate storm sewer system and sanitary sewer system and the Clean Water Act violations that are the subject of this Complaint are located in Oregon.

26.    The source of the violations is located in the City of Albany, Linn County, Oregon, thus assignment to the Eugene Division is proper pursuant to LR 3-2(a)(3).

## PARTIES

### Plaintiff Willamette Riverkeeper

27.    Plaintiff Willamette Riverkeeper is an Oregon non-profit corporation incorporated and headquartered in Portland, Oregon, with a regional office located in Eugene, Oregon. Willamette Riverkeeper has seven staff members. Willamette Riverkeeper has approximately 3,000 members, and nearly 4,000 additional supporters throughout the State of Oregon, including members and supporters in the City. Willamette Riverkeeper brings this action on behalf of itself and its affected members and supporters.

28.    Willamette Riverkeeper was founded in 1996, and serves as the eyes, ears, and voice of the Willamette River (the "Willamette River" or "the river"). For more than 20 years, the organization's sole mission has been to protect and restore the Willamette River's water quality, habitat, and the resources of the Willamette River basin. Willamette Riverkeeper's work focuses on the health of the river's natural ecosystem, which is inseparable from the quality of life of the river's community, including many members and supporters of Willamette Riverkeeper, who live, work, and recreate in the river, its tributaries and side channels, and its surrounding watersheds (including the stretch of Willamette River at issue in this case). Willamette Riverkeeper believes that a river with good water quality and abundant natural habitat, safe for fishing and swimming, is a basic public right. Willamette Riverkeeper engages in public outreach and education, advocacy with agencies, agency administrative processes, habitat restoration, Superfund cleanup, Clean Water Act compliance, and where necessary, litigation.

29.    Willamette Riverkeeper organizes numerous paddle events throughout the year to facilitate public access to, and appreciation for, the river, its ecosystem, and its health. Since 2001,

Willamette Riverkeeper hosts an 80 to 90 mile five-day Willamette River trip along the National Water Trail called "Paddle Oregon." Willamette Riverkeeper hosts a two-day "Pinot Paddle" to educate members, supporters, and the public about the perfect balance of temperature, humidity, soil, and river ecosystem necessary to one of Oregon's premier wine-growing regions along the Willamette River. Annually, Willamette Riverkeeper hosts "The Great Willamette Clean Up" event across the length of the entire river. Throughout the year, Willamette Riverkeeper hosts several other trips, for example, day-long Willamette Greenway Paddle Trips, Paddle & Weed Pull Trips, Summer Solstice Paddles, and its River Guardians Program regularly cleans up the river through "Trashy Tuesdays" and "Trashy Thursdays" events in Portland, Corvallis, and Eugene. Even this year with the Covid-19 pandemic, Willamette Riverkeeper is continuing to conduct socially-distanced river clean-ups, led a small week-long 187-mile paddle of the entire length of the Willamette River, and the organization's staff continues to monitor river conservation and restoration projects in the field.

30.    In 2016, Willamette Riverkeeper won Travel Oregon's Gene Leo Memorial Sustainable Tourism Award at the Oregon Travel and Tourism Industry Achievement Awards. In 2019, Willamette Riverkeeper won the Oregon Parks and Recreation Association Volunteer Service Award for contributing to protecting and restoring the river.

31.    The environmental, health, aesthetic, and recreational interests of Willamette Riverkeeper and its members and supporters have been, are being, and will be adversely affected by the City's illegal operation of its small municipal storm sewer system, pollutant discharges, and unpermitted sewer overflows into waters of the U.S. from its antiquated and improperly maintained sewer system.

32.    Willamette Riverkeeper members and supporters reside, work, and recreate in, next to, and around the Willamette River and the Willamette River Basin, including the near where the City illegally operates its small municipal storm sewer system, the City's old, antiquated pipes discharge pollutants, and unpermitted overflows occur.

33.    Willamette Riverkeeper members and supporters live and recreate in the river and its vicinity, through activities including but not limited to paddling, boating, swimming, fishing, nature walking, hiking, photography, birdwatching, observing wildlife, hunting, and plant identification; they have aesthetic and health interests in the health and restoration of the waters impacted by the City's unpermitted discharges and overflows.

34.    On August 12–16, 2019, approximately 155 paddlers and 30 paddle leaders joined in Willamette Riverkeeper's annual "Paddle Oregon" five-day paddle trip along the Willamette River National Water Trail from Marshall Island Access in Junction City, Oregon and ending at Wallace Marine Park in Salem, Oregon. On August 14, 2019, Paddle Oregon paddlers camped overnight at a pre-reserved spot at the City's Bryant Park, on the banks of the Willamette River. Paddle Oregon paddlers have camped at Bryant Park for several years. On the morning of August 15, 2019, Paddle Oregon's 185 paddlers left camp and began their scheduled 18-mile paddle down river to Independence, Oregon.

35.    Less than two miles into their August 15, 2019 paddle, Paddle Oregon paddlers went right through the City's ongoing August 15, 2019 estimated 2,100 gallon raw sewage discharge to the Willamette River, from a location identified on the City's August 20, 2019 Sanitary Sewer Overflow Report as "Abandoned sewer line near Bowman Park," located near 1905 Linn Avenue, Albany, Oregon.

36.     Unaware and unnotified of the raw sewage discharge, Paddle Oregon paddlers paddled through the City's raw sewage discharge, and swam in the river the morning of the discharge. The same morning, Willamette Riverkeeper's Executive Director snorkeled in the river, immersing his face and head in the water looking for freshwater mussels.

37.     Willamette Riverkeeper also learned that the City has refused to apply for, obtain, and comply with a small municipal separate storm sewer General Permit or an Individual NPDES Permit for its MS4 system. Without a MS4 General Permit or an Individual NPDES Permit for its MS4 system, the City impermissibly discharges municipal stormwater to the Willamette River.

38.     Willamette Riverkeeper brings this action on its own behalf and on behalf of its adversely affected members and supporters. Willamette Riverkeeper is a "citizen" within the meaning of 33 U.S.C. § 1365(g).

### Defendants City of Albany and
### Albany City Manager Peter Troedsson, Individually and in his Official Capacity

39.     Defendant City of Albany and Defendant Peter Troedsson are the officials with responsibility for the actions and inactions challenged in this Complaint (collectively, the "City" or "Albany").

40.     Albany is a "municipality" within the meaning of 33 U.S.C. § 1362(4) because it is a city having jurisdiction over disposal of sewage, industrial wastes, stormwater, and other wastes, and the City is a "person" within the meaning of 33 U.S.C. § 1362(5) because it is a political subdivision of the State of Oregon.

41.     Defendant Peter Troedsson is the City Manager for the City of Albany. Defendant Peter Troedsson holds the public office of City Manager and serves in his official capacity as a public body. 33 U.S.C. § 1362(4).

## LEGAL FRAMEWORK

### The Clean Water Act and Unpermitted Discharges

42.   The Clean Water Act is the principal federal statute enacted to protect the quality of the Nation's surface water resources. Under the Clean Water Act, the United States has committed itself "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," including establishing a "national goal that the discharge of pollutants into the navigable waters be eliminated by 1985 . . . ." 33 U.S.C. § 1251(a).

43.   The Clean Water Act prohibits the addition of any pollutant from any point source into waters of the United States, except as authorized pursuant to certain enumerated sections of the Clean Water Act, and in compliance with these provisions, including the National Pollution Discharge Elimination System ("NPDES") permitting program. 33 U.S.C. § 1311(a); 33 U.S.C. § 1342(a); 40 C.F.R. § 122.1; *see also* ORS 468B.050(1)(c) (NPDES permittee may not "[i]ncrease in volume or strength any wastes in excess of the permissive discharges specified under an existing permit.").

44.   The Clean Water Act defines the term "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

45.   The Clean Water Act defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

46.   Under the Clean Water Act, the term "pollutant" includes, among other things, solid waste, sewage, garbage, sewage sludge, chemical materials, biological materials, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial and municipal waste discharged into water. 33 U.S.C. § 1362(6).

47.    The Clean Water Act broadly defines a "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

48.    Under the Clean Water Act, stormwater conveyances and pipes, sewer lines and emergency overflow pipes, whether active or abandoned or properly or improperly sized, are "point sources" under the Clean Water Act. 33 U.S.C. § 1362(14) ("any pipe").

49.    Unless done pursuant to and in strict compliance with a NPDES permit, the addition of any pollutant by any person, from or through a point source, into waters of the United States, is prohibited under the Clean Water Act.

50.    Discharges prohibited by the Clean Water Act that are ongoing and likely to continue are ongoing violations of the Clean Water Act.

51.    At all relevant times, the State of Oregon has been authorized by the United States Environmental Protection Agency to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to 33 U.S.C. § 1342(b).

52.    The Clean Water Act authorizes any citizen to commence a civil action against any person who is alleged to be in violation of an "effluent standard or limitation." 33 U.S.C. § 1365(a). The Clean Water Act defines "effluent standard or limitation" as including various specified sections of the Clean Water Act as well as provisions of NPDES permits. 33 U.S.C. § 1365(f).

53.    Pursuant to the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §§ 19.2, 19.4, each separate violation of the Act subjects the City to a civil penalty of up to $55,800 per day, per violation.

**Oregon Water Pollution Control Laws and the Willamette River**

54.     Under Oregon's Water Pollution Control laws, unless a discharge is authorized by a permit, no person shall "cause pollution of any waters of the state," or "discharge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established for such waters by the Environmental Quality Commission." ORS 468B.025(1)(a), (b).

55.     Oregon's water pollution control policy provides that "no waste be discharged into any waters of this state without first receiving the necessary treatment or other corrective action to protect the legitimate beneficial uses of such waters." ORS 468B.015(3).

56.     In Oregon "'pollution' means such contamination or other alteration of the physical, chemical, or biological properties of any waters of the state, including change in temperature, taste, color, turbidity, silt, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substance into any water of the state that either by itself or in connection with any other substance present can reasonably be expected to create a public nuisance or render such waters harmful, detrimental, or injurious to public health, safety, or welfare; to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses; or to livestock, wildlife, fish, other aquatic life or the habitat thereof." OAR 340-041-002(45).

57.     The Willamette River and its tributaries are state resource waters with several designated beneficial uses. ORS 536.3001(1); OAR 340-041-0002(17).

58.     Oregon has statewide narrative water quality criteria (OAR 340-041-0007) and water quality standards for specific pollutants. *See, e.g.,* OAR 340-041-0009 (bacteria), 340-041-0011 (biocriteria), 340-041-0016 (dissolved oxygen), 340-041-0019 (nuisance

phytoplankton growth), 340-04100021 (pH), 340-041-0028 (temperature), 340-041-0031 (total dissolved gas), 340-041-0032 (total dissolved solids), 340-041-0033 (toxic substances), and 340-041-0036 (turbidity).

**Small Municipal Separate Storm Sewer ("MS4") Systems under the Clean Water Act**

59.   EPA has regulated MS4s since 1994. 40 C.F.R. § 122.26.

60.   The purpose of EPA's stormwater program is to designate "additional sources that need to be regulated to protect water quality and to establish a comprehensive storm water program to regulate these sources." 40 C.F.R. § 122.30(b).

61.   EPA's MS4 regulations differentiate between small, medium, and large population municipalities. 40 C.F.R. § 122.26(b)(4) (large MS4s), (7) (medium MS4s), (16) (small MS4s). Municipalities with a separate storm sewer system located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census, which are not large or medium MS4s, are small MS4s. 40 C.F.R. § 122.32(a)(1).

62.   EPA finalized regulations for "Phase II" of its stormwater program in 1999 (64 Fed. Reg. 68722 (Dec. 8, 1999)), requiring controls on stormwater discharges from small municipal stormwater systems. 40 C.F.R. § 122.34; 64 Fed. Reg. 68722 (effective Feb. 7, 2000).

63.   As of February 7, 2000, operators of regulated small MS4s "must seek coverage under a NPDES permit issued by your NPDES permitting authority…. [o]therwise your NPDES permitting authority is the EPA Regional Office." Oregon DEQ is authorized by EPA to administer the MS4 permit program in Oregon. 33 U.S.C. § 1342(b); OAR 468B.050(1).

64.   On November 30, 2018 the Oregon DEQ, Oregon Environmental Quality Commission (EQC) issued a NPDES General Permit for Municipal Separate Storm Sewer Systems, Phase II General Permit ("Oregon MS4 General Permit").

65.    Prior to the issuance of the Oregon MS4 General Permit on November 30, 2018, and since

that time, Oregon has made individual MS4 Phase II NPDES permits an option for all

permit registrants. Oregon DEQ Response to Comment at 23–24 (Nov. 30, 2018); 40

C.F.R. § 122.33 (permit coverage available under an individual permit tailored to the site-

specific characteristics of the system).

66.    Small municipal separate storm sewer systems are required to obtain NPDES permit

coverage for their stormwater discharges, pursuant to the statutory mandate set forth under

the Clean Water Act and its implementing regulations. 33 U.S.C. § 1342(p)(6) and 40

C.F.R. § 122.30–.37.

67.    A "municipal separate storm sewer" is defined as a conveyance or system of conveyances

(including roads with drainage systems, municipal streets, catch basins, curbs, gutters,

ditches, man-made channels, or storm drains), (i) owned or operated by a public body

created by or pursuant to State law having jurisdiction over disposal of sewage, industrial

wastes, stormwater, or other wastes, (ii) designed or used for collecting or conveying

stormwater, (iii) which is not a combined sewer, and (iv) which is not part of a Publicly

Owned Treatment Works. 40 C.F.R. § 122.26(b)(8).

68.    "Small municipal separate storm sewer systems" are defined in pertinent part as separate

storm sewers that are (i) owned or operated by a public body created by or pursuant to State

law having jurisdiction over disposal of sewage, industrial wastes, stormwater, or other

wastes, and (ii) not defined as large or medium municipal separate storm sewer systems or

designated by the EPA as contributing to a violation of a water quality standard or

pollutants to waters of the United States. Small municipal separate storm sewer systems

include systems similar to separate storm sewer systems in municipalities, such as systems

COMPLAINT                                                        14

at military bases, large hospital or prison complexes, and highways and other thoroughfares. 40 C.F.R. § 122.26(b)(16).

69.    "Small" municipal stormwater systems are those serving a population of 50,000 people or more as determined by census data and whether a municipality is located in an urbanized area. EPA, Stormwater Phase II Final Rule Fact Sheet 2.1 (EPA 833-F-00-003) Jan. 2000 (rev. June 2012); 40 C.F.R. § 122.32(a).

70.    Phase II municipalities may only discharge stormwater to surface waters pursuant to, and in compliance with the terms and conditions of, a NPDES permit and must develop a Stormwater Management Program that includes six minimum control measures. 40 C.F.R. § 122.34(b)(1)–(6).

71.    Oregon requires reductions in the discharges of pollutants from stormwater, and that permit registrants "not caus[e] or contribut[e] to an excursion [sic] of the applicable water quality standards as established in OAR 340-041." Oregon MS4 General Permit at 8.

72.    The Oregon MS4 General Permit lists the City of Albany as a "New Registrant" subject to municipal stormwater regulation. MS4 General Permit at 5–6; 33 U.S.C. § 1342.

## 2000 NPDES Waste Discharge Permit Requirements and Sanitary Sewer System

73.    A sanitary sewer system is "A conduit intended to carry liquid and water-carried wastes from residences, commercial buildings, industrial plants and institutions together with minor quantities of ground, storm and surface waters that are not admitted intentionally." 40 C.F.R. § 35.2005(b)(37).

74.    A sanitary sewer system is different from a combined sewer, which is a sewer "designed as a sanitary sewer and a storm sewer." 40 C.F.R. § 35.2005(b)(11).

75.    On November 20, 2000, Oregon DEQ approved a NPDES Waste Discharge Permit for the City's wastewater collection, treatment, control, disposal, and discharge of adequately treated wastewaters only from authorized discharge points, and only in conformance with all requirements, limitations, and conditions set forth in the NPDES Waste Discharge Permit.

76.    Pollutants referenced in the City's NPDES Waste Discharge Permit include *E. coli* bacteria, pH, carbonaceous biochemical oxygen demand (CBOD5), total suspended solids, total chlorine residual, toxics, ammonia-N, temperature, flow, and nutrients.

77.    The City's NPDES Waste Discharge Permit authorizes only two (2) outfalls for wastewater treatment plant discharges (Outfalls # 001 and # 001A), and five (5) "emergency overflow" outfall locations for wastewater only: Bowman Park (#002) to the Willamette River; Maple Street (#003) to the Calapooia River; Montgomery (#004) to the Willamette River; MH #7 (#005) to the Willamette River; and Columbus LS (#006) to Oak Creek.

78.    Under the City's NPDES Waste Discharge Permit, "[e]xcept as otherwise provided by law, no wastes shall be discharged from these [emergency overflow] outfalls and no activities shall be conducted which violate water quality standards" unless the cause of the discharge is due to specified storm events.

79.    The City's NPDES Waste Discharge Permit Schedule F § D.5 "Reporting Requirements" states that "[t]he permittee shall report any noncompliance which may endanger health or the environment," and includes in the information which "shall" be reported within 24 hours, any "[v]iolation of maximum daily discharge limitation for any of the pollutants listed by the Director in this permit."

80.    The City's NPDES Waste Discharge Permit contains "Standard Conditions," Schedule F, which state: "<u>Duty to Comply</u>. The permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of Oregon Revised Statutes (ORS) 468B.025 and is grounds for enforcement action; for permit termination, suspension, or modification; or for denial of a permit renewal application."

81.    ORS 468B.025 is part of Oregon's Water Pollution Control laws, which the Oregon Legislature placed within ORS Title 36 (Public Health and Safety).

82.     ORS 468B.025(1) states that unless a discharge is authorized by a permit, no person shall "cause pollution of any waters of the state," or "discharge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established for such waters by the Environmental Quality Commission." ORS 468B.025(1)(a), (b).

83.    ORS 468B.025(2) further states that "[n]o person shall violate the conditions of any waste discharge permit issued under ORS 468B.050."

84.    ORS 468B.025(3) further states that "[v]iolation of subsection (1) or (2) of this section is a public nuisance."

85.    The City's NPDES Waste Discharge Permit is a waste discharge permit issued under ORS 468B.050.

86.    The City's NPDES Waste Discharge Permit Schedule A "Waste Discharge Limitations not to be Exceeded" states that "[e]xcept as otherwise provided by law, no wastes shall be discharged from these [Outfalls 002 through 006 (Emergency Overflows)] outfalls and no activities shall be conducted which violate water quality standards as adopted in OAR 340-

41-445, unless the cause of the discharge is due to storm events as allowed under OAR 340-41-120(13) and (14)…."

87.   Although OAR 340-041-445 and OAR 340-041-120 no longer exist in Oregon's regulatory framework, the applicable provisions from the City's NPDES Waste Discharge Permit state:

> Emergency overflow discharges are prohibited …from May 22 through October 14, except during a storm event greater than the one-in-ten-year, 24-hour duration storm or it's [sic] equivalent. In the winter, emergency overflow discharges are allowed until January 1, 2010. After January 1, 2010, overflows are prohibited except during a storm event greater than a one-in-five-year, 24-hour storm event or its equivalent.

> If an overflow occurs between May 22 and June 1, and if the permittee demonstrates to the Department's satisfaction that no increase in risk to beneficial uses occurred because of the overflow, no violation shall be triggered if the storm associated with the overflow was greater than the one-in-five-year, 24-hour duration storm or its equivalent.

88.   The City submitted SSO Reports for overflow events to the Oregon DEQ stating that the one-in-five-year, 24-hour rainfall for the sewerage system area is 2.69 inches.

89.   The City's July 22, 1980 NPDES Waste Discharge Permit contained a goal of eliminating raw sewage overflows by July 1, 1983. The City's schedule to eliminate raw sewage overflows was modified on September 19, 1984.

## FACTUAL BACKGROUND

### Willamette River and Willamette Basin

90.   The Willamette River is 187 miles long, running from its headwaters of Waldo Lake and the McKenzie River spring systems to the Columbia River in Portland.

91.   The Willamette River is flanked by the forested slopes of the Coast and Cascade mountain ranges. The river and its tributaries support a wide variety of ecosystems and habitats,

including forested and depressional wetlands, riparian forests and shrublands, upland and wet prairies, chapparal, woodlands, and oak savannas.

92.    The Willamette River Basin rivers, streams, and lakes support native fish and other wildlife, and support federally-listed as threatened under the Endangered Species Act native populations of Chinook salmon, coho, and steelhead trout. The Willamette River also has bull trout, rainbow and cutthroat trout, and other aquatic life culturally and economically significant to the basin.

93.    These fish and wildlife depend on the presence and quality of specific physical and biological features of the river, including but not limited to water quality.

94.    Oregon has statewide water quality criteria. See OAR 340-041-001 to 340-041-061.

95.    In the Willamette River Basin, Oregon regulations proscribe Beneficial Uses to Be Protected (OAR 340-041-0340), Total Maximum Daily Loads (TMDLs) (OAR 340-041-0344), and Water Quality Standards and Policies (OAR 340-041-0345).

96.    On the Willamette River, the designated beneficial uses vary depending on the section of the river and tributaries. The section of the Willamette River main stem where the City is located runs from the Coast Fork in Eugene to Salem (approximately River Mile 187 to River Mile 84). The designated uses of this section include: public domestic water supply and private domestic water supply (with adequate pretreatment and natural quality that meets drinking water standards); industrial water supply; irrigation; livestock watering; fish and aquatic life; wildlife and hunting; fishing; boating; water contact recreation; and aesthetic quality. OAR 340-041-0340 (Table 340A).

97.  The main stem Willamette River's beneficial uses in the Coast Fork–Salem section include salmon and trout (all species) rearing and migration, and salmon and steelhead spawning from October 15 to May 15. OAR 340-041 Figures 0340A and 0340B.

98.  Oregon's 303(d) list shows the Willamette River in and around the vicinity of the City as impaired.

99.  In the River Mile 108-119 and River Mile 119-148 sections of the Willamette River, there are TMDLs for point sources and nonpoint sources of pollution. These TMDLs include: Escherichia coli (*E. coli*) (point and nonpoint source); turbidity (nonpoint source): biochemical oxygen demand ("BOD") (nonpoint source); and temperature (point and nonpoint source).

100.  Discharging untreated waste and polluted stormwater into the Willamette River, including raw sewage, chemicals, toxins, pathogens, nutrients, heavy metals, oils, and sediment, can impair human health, aquatic environments and species that depend on these environments, and recreational uses of the Willamette River.

101.  The City is located in the Upper Willamette subbasin, within the Oak Creek Watershed.

102.  The City's Bryant Park is located at approximately River Mile 120; the City's Bowman Park is located at approximately River Mile 119, and the City's August 15, 2019 raw sewage discharge occurred at approximately River Mile 118 near Bowman Park.

103.  The Clean Water Act requires states to monitor water pollution and report to the U.S. EPA every two years. EPA then issues Waterbody Quality Assessment Reports. Applicable U.S. EPA Waterbody Quality Assessment Reports for the Willamette River include the reports for River Mile 119.7 to River Mile 148.8 (approximately from the railway bridge crossing the Willamette River in Albany down to Norwood Island which is south of Corvallis)

(Waterbody ID 1227618456580_119.7_148.8), and for River Mile 119.7 to River Mile 108 (approximately from the railway bridge in Albany to Luckiamute Landing and the confluence of the Santiam River) (Waterbody ID 1227618456580_108_119.7).

104.   Both EPA Water Quality Assessment Reports characterize the Willamette River in these areas as "good" for aesthetic value, but "impaired" for anadromous fish passage, resident fish and aquatic life, and water contact recreation. River Mile 108-119.8 is also impaired for aquatic life and salmonid fish spawning.

105.   According to EPA Water Quality Assessment Reports, in the segments of the Willamette River near the City, pathogens cause fecal coliform impairment and affect the water contact recreation designated use; dissolved oxygen causes organic enrichment and oxygen depletion and affects salmonid fish spawning and anadromous fish passage; nutrients cause nutrient levels to increase and affect resident fish and aquatic life; sedimentation causes increased sediments and siltation and affects resident fish and aquatic life; and pH, acidity, caustic conditions cause pH impairments and affect anadromous fish passage. All of these impairments need a TMDL plan to restore impair waters.

106.   Through the City's unpermitted discharges from its old, antiquated waste discharge system, the City causes and contributes to the Willamette River's water quality impairments.

**The City's Small Municipal Separate Storm Sewer System (MS4)**

107.   Stormwater runoff contains a wide variety of pollutants, including priority organics, toxic chemicals, oil and grease, heavy metals, nutrients, organic constituents, suspended solids, hydrocarbons, bacteria, pathogens, and other pollutants.

108.    Stormwater runoff and surface water discharges from municipal separate storm sewers are a major cause of water quality impairment in rivers, lakes, estuaries and coastal areas across the United States and in Oregon.

109.    Stormwater runoff can cause exceedances of water quality standards by contributing significant amounts of pollution to receiving waters, changing natural hydrologic patterns, accelerating stream flows, destroying aquatic habitat, and elevating pollutant concentrations and loadings.

110.    To legally operate, MS4s must be permitted under EPA's NPDES stormwater program.

111.    The City owns and operates a small MS4 pursuant to 40 C.F.R. §§ 122.26(b)(8) and (16) and its MS4 is located in an urbanized area as determined by the 2010 Decennial Census by the Bureau of the Census.

112.    The City has approximately 128 miles of stormwater pipes, 67 miles of ditches, 2,200 manholes, and 4,180 catch basins. City of Albany Capital Improvement Program FY 2014–2015 through 2018–2019 at 39.

113.    The City receives an average annual rainfall of approximately 42 inches.

114.    The City's last master plan dates from 1988, does not include North Albany, "and does not reflect current stormwater management practices, the current level of development within the community, or current regulatory requirements."

115.    The City does not have a Stormwater Management Program that contains the required programmatic and plan elements.

116.    The City's streets, roofs, municipal buildings and infrastructure, and parking lots generate stormwater runoff containing pollutants. The City's stormwater collection system drains from a conveyance system (including roads with drainage systems, municipal streets, catch

basins, curbs, gutters, ditches, man-made channels, storm drains, or outfalls) which are designed or used for collecting, conveying, or transmitting stormwater.

117.   The City is responsible for conducting maintenance on the roads, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, outfalls, and storm drains that drain into the City's stormwater collection system.

118.   The City discharges stormwater with some combination of pollutants.

119.   Oregon's MS4 General Permit is designed to require operators of municipal separate storm sewer systems like the City to reduce the discharge of pollutants from their municipal systems to the maximum extent practicable.

120.   Oregon's MS4 General Permit includes the following requirements to address discharges from small municipal separate storm sewer systems, among others. Notably, operators like the City must:

   a.      Develop, implement, and enforce a stormwater management program;

   b.      Address stormwater runoff from new development and redevelopment;

   c.      Reduce pollutants in stormwater runoff from construction activities; and

   d.      Provide opportunities for the public to participate in the development, implementation, and review of the operator's stormwater management program.

121.   Neither the City, nor any other entity on its behalf, has, as of the date of this Complaint, obtained coverage under the general or individual NPDES permitting programs for the City's municipal separate storm sewer system.

122.   The City has sued the Oregon DEQ challenging the scope of the statewide general MS4 permit applicable to small municipalities.

## **The City's Waste Discharge and Sanitary Sewer System**

123.    The City's NPDES Waste Discharge Permit requires the City to be responsible for the operation and maintenance of wastewater collection, treatment, control, disposal, and to discharge adequately treated wastewaters only from authorized discharge points.

124.    The City owns, operates, and maintains a sanitary sewer system designed to transport sewage.

125.    The City's sanitary sewer system includes treated wastewater outfalls and emergency overflow outfalls which discharge to waters of the United States.

126.    Sanitary sewer system overflows, releases, or discharges can occur due to factors including but not limited to blocked sewer lines, broken sewer lines, poor pipe connections, old, antiquated leaking pipes, stormwater infiltration, or groundwater inflow.

127.    For sanitary sewer system overflow events, the City submits Sanitary Sewer Overflow ("SSO") Reports to the Oregon DEQ. The City has submitted SSO Reports for different events, including but not limited to emergency outfall overflows, old and/or abandoned pipe leaks, or manhole discharges.

128.    The City's SSO Reports indicate that the City is experiencing repeated, ongoing, unpermitted discharges of raw sewage from old, antiquated, or abandoned pipes, and from its emergency overflow outfalls discharging pollutants to waters of the United States, including but not limited to the following events:

COMPLAINT                                                        24

| Examples of City SSO Report Discharges | | |
|---|---|---|
| Approximate Date of Event | Site | Estimated Gallons |
| 12/20/14 | #004 Montgomery | 243,000 |
| 1/17/15 | #004 Montgomery | 198,000 |
| 10/14/14 | Near Bowman Park Overflow Site # 2 | 3,000 |
| 12/7/15 | #004 Montgomery | 27,090 |
| 12/17/15 | #004 Montgomery | 1,652,000 |
| 11/25/16 | #004 Montgomery | 495,000 |
| 2/5/17 | #004 Montgomery | 599,000 |
| 2/16/17 | #004 Montgomery | 407,000 |
| 2/21/17 | #004 Montgomery | 9,000 |
| 10/22/17 | #004 Montgomery | 89,430 |
| 12/18/18 | #004 Montgomery | 830,000 |
| 2/24/19 | #004 Montgomery | 264,000 |
| 4/7/19 | #004 Montgomery | 68,500 |
| 4/10/19 | #004 Montgomery | 5,088,000 |
| 8/15/19 | Abandoned Sewer Line near Bowman Park | 2,100 |
| Total estimated gallons | | 9,732,020 |

129.    Raw sewage contains pathogens including but not limited to bacteria (fecal coliform (including *E. coli*), salmonella, shigella, campylobacter); viruses (Hepatitis A, rotavirus, enteroviruses); protozoa (*Giardia lamblia, Cryptosporidium parvum*) and parasites (roundworm, hookworm, whipworm). Raw sewage also contains suspended solids, heavy metals, chemical, pharmaceuticals, and toxic constituents. Raw sewage can alter a water body's pH and oxygen levels. Raw sewage contains nutrients that may cause eutrophication of receiving water bodies and can stress biological, chemical, and physical attributes of aquatic ecosystems; it can also transmit disease to humans and animals.

130.    The City's SSO Reports submitted to the Oregon DEQ confirm that the City rarely conducts or reports any water quality sampling for the City's SSO events.

COMPLAINT                                           25

131.    The City's Public Works Department has stated that the City has "perpetually leaking mains, undersized mains, and mains that have reached the end of their expected life service" in the City's water system.

132.    The City's Capital Improvement Program Fiscal Year 2019–2020 through 2023–2024 City Manager's Message stated that the City has wooden pipes that it only discovered in 2018.

133.    Regarding the August 15, 2019 raw sewage discharge from an antiquated pipe to the Willamette River, the City stated: "This particular pipe we've known about. It's just old." Kyle Odegard, "Old Albany pipe dumps 2,100 gallons of sewage into Willamette." Albany Democrat-Herald (Aug. 15, 2019).

134.    Upon information and belief, the August 15, 2019 discharges were commingled with pollutants, including but not limited to raw sewage.

135.    The City's waste discharge system includes pipes that are more than 100 years old, wooden pipes, pipes that have reached the end of their expected life service, undersized pipes, perpetually leaking pipes, and "abandoned" pipes which leak.

136.    The City has not mapped or inventoried all of its old, and/or abandoned, pipes in its waste discharge system.

137.    The City has deferred for multiple years waste discharge sanitary sewer system maintenance and upgrades.

138.    Upon information and belief, the City owns or has control over old and/or abandoned leaking pipes that have added, are adding, and will continue to add pollutants to waters of the United States from the City's sanitary sewer system and which are unpermitted under the City's NPDES Waste Discharge Permit.

139.    Upon information and belief, the City has impermissibly discharged pollutants through its

emergency outfalls, and from unauthorized sources, including during storm events which

were not greater the than a one-in-five-year, or one-in-ten year, 24 hour storm events or its

equivalent. For example, for Outfall # 004 at Montgomery Street, the City's SSO Reports

list rainfall in 24 hours prior to discharge events and "cumulative rainfall" for the 24 hours

prior to and during discharge events. The SSO Reports show rainfall at levels less than and

close to 2.69 inches, including:

| Examples of City Rainfall Events Less Than 2.69 Inches | | |
|---|---|---|
| Approximate Date of Event | Rainfall in 24 Hours Prior | Cumulative Rainfall in 24 Hours Prior & During Event |
| 12/20/14 | 1.78" | 2.61" |
| 1/17/15 | 1.56" | 1.96" |
| 12/7/15 | 1.66" | 1.74" |
| 12/17/15 | 1.62" | 3.66" |
| 11/25/16 | 1.04" | 2.43" |
| 2/5/17 | 1.20" | 2.82" |
| 2/16/17 | 1.73" | 2.74" |
| 2/21/17 | 1.23" | 1.40" |
| 10/22/17 | 1.76" | 2.47" |
| 12/18/18 | 1.04" | 2.05" |
| 2/24/19 | 1.21" | 1.77" |
| 4/7/19 | 1.42" | 1.65" |
| 4/20/19 | 0.06" | 0.38" |

140.    Additionally, the City's SSO Reports relied on several different rain stations at different

locations as the baseline for its rainfall data for Outfall # 004 at Montgomery Street, even

though Outfall # 004 did not change location.

**Willamette Riverkeeper**

141.   Willamette Riverkeeper's First and Second Notice Letters stated that a lawsuit would be filed against the City if the violations of the Clean Water Act were not rectified. See Attachments A and B to this Complaint. Citizen suits to address violations of the Clean Water Act may only be filed 60 days after the mailing of such a notice. 33 U.S.C. § 1365(b).

142.   Willamette Riverkeeper files this Complaint to protect its interests and the interests of its members and supporters in the Willamette River and the Basin, and to further Congress' goal of restoring and maintaining the integrity of our Nation's public waters.

143.   Willamette Riverkeeper has been required to expend costs and to devote organizational resources to this litigation and to obtain the services of legal counsel and experts to prosecute this action.

**CLAIMS FOR RELIEF**

144.   Willamette Riverkeeper hereby incorporates by reference all preceding paragraphs.

145.   The Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless the discharge is authorized by a General or Individual NPDES permit issued pursuant to 33 U.S.C. § 1342.

146.   The City is operating a small municipal storm sewer system without authorization under a General or Individual NPDES Permit since at least December 21, 2010 (April 1st is "Census Day" and on December 21, 2010  the Census Bureau determined and delivered population counts and apportionment counts to the President), in contravention of 33 U.S.C. § 1342, and such action is presently ongoing and likely to continue unless the relief requested herein is granted.

COMPLAINT                                    28

147.   The City has discharged pollutants in contravention of 33 U.S.C. § 1311 from the City's public waste discharge system, since at least October 2015, and such discharges are presently ongoing and likely to continue unless the relief requested herein is granted.

148.   The City has violated its NPDES Waste Discharge Permit in contravention of 33 U.S.C. §§ 1311 and 1342 and such violations are presently ongoing and likely to continue unless the relief requested herein is granted.

149.   Unless enjoined by the Court, the City will continue its violations of the Clean Water Act.

150.   Under 33 U.S.C. § 1319(d) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §§ 19.2, 19.4, each separate violation of the Act subjects the City to a civil penalty of up to $55,800 per day, per violation.

## FIRST CLAIM FOR RELIEF

**Violation of the Clean Water Act
(Failure to Obtain and Comply with a
Small Municipal Separate Storm Sewer System ("Small MS4") Permit)**

151.   Willamette Riverkeeper incorporates by reference all preceding paragraphs.

152.   Operators of small municipal separate storm sewer systems located in an urbanized area as determined by the latest Decennial Census are automatically required to obtain coverage under a small municipal separate storm sewer system permit, 40 C.F.R. § 122.32(a), by availing themselves of one of the three alternatives for NPDES permit coverage set forth in 40 C.F.R. § 122.33.

153.   The City has not availed itself of any of the three alternatives for NPDES permit coverage set forth in 40 C.F.R. § 122.33.

154.  As an operator of a regulated small MS4, the City is required to reduce the discharge of pollutants from the small MS4 to the maximum extent practicable as part of its stormwater management program. 40 C.F.R. § 122.32(a).

155.  The City has failed and continues to fail to reduce the discharge of pollutants from its regulated MS4 system to the maximum extent practicable.

156.  Oregon DEQ is the relevant Clean Water Act NPDES permitting authority for the City.

157.  On November 30, 2018, the Oregon DEQ issued a General Permit for Stormwater Discharges from Small Municipal Storm Sewer Systems that applies to small municipal separate storm sewer systems in Oregon.

158.  The City operates a small municipal separate storm sewer system located in Albany, Oregon, which is located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census. Thus, the City is required to obtain coverage under a small municipal separate storm sewer system permitting program. 40 C.F.R. § 122.33.

159.  The individual NPDES permit option for the small municipal separate storm sewer system has been available to the City since at least December 21, 2010 and remains available as a way for the City to obtain NPDES permit coverage.

160.  Each and every day since at least December 21, 2010, on which the City has discharged and continues to discharge stormwater from its municipal separate storm sewer system without authorization under a small municipal separate storm sewer system permit or without complying with the terms and conditions of such a permit is a separate and distinct violation of §§ 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

## SECOND CLAIM FOR RELIEF

### Violation of the Clean Water Act
### (Unauthorized Discharge of Pollutants into Waters of the United States
### from the City's MS4 System)

161. Willamette Riverkeeper incorporates by reference all preceding paragraphs.

162. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with an NPDES permit issued pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

163. Operators of a small municipal separate storm sewer system in the State of Oregon are required to obtain Clean Water Act permit coverage under the small municipal separate storm sewer system permitting program.

164. In order to be authorized to discharge lawfully under the small municipal separate storm sewer system permit, operators of small municipal separate storm sewer systems must meet the requirements set forth in this permitting program.

165. These municipal separate storm sewer system permit requirements are designed to reduce the discharge of pollutants from the municipal separate storm sewer system to the maximum extent practicable.

166. The City is an operator of a small municipal separate storm sewer system in the State of Oregon that has not obtained coverage under a general or individual small municipal separate storm sewer system permit.

167. The City discharges stormwater containing pollutants from its municipal separate storm sewer system in violation of the Clean Water Act into the Willamette Rivers and its

tributaries, forks, and connected waters, which are waters of the United States within the Upper Willamette Watershed and the Oak Creek Subwatershed.

168. The City's discharges of stormwater from its municipal separate storm sewer system are discharges of pollutants within the meaning of Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(12), as well as "point source" discharges into waters of the United States.

169. The City's municipal separate storm sewer system discharges pollutants to waters of the United States in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

170. Since at least December 21, 2010 the City has discharged and continues to discharge stormwater from its municipal separate storm sewer system without obtaining coverage under a valid NPDES small municipal separate storm sewer system permit as required by Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

171. The City discharged and continues to discharge stormwater containing pollutants from its small municipal separate storm sewer system without permit coverage since at least December 21, 2010. Each discharge constitutes a distinct violation of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

## THIRD CLAIM FOR RELIEF

**Violation of the Clean Water Act**
**(Failure to Develop, Update, Evaluate, Implement, and Enforce**
**a Stormwater Management Program as Required by EPA MS4 Regulations)**

172. Willamette Riverkeeper incorporates by reference all preceding paragraphs.

173. Operators of regulated small municipal separate storm sewer systems are required to develop, implement, and enforce a stormwater management program designed to reduce the discharge of pollutants from the small municipal separate storm sewer system to the maximum extent practicable, to protect water quality, and to satisfy the appropriate water

quality requirements of the Clean Water Act, which plan must include the minimum control measures described in 40 C.F.R. § 122.34(b).

174.    As an operator of a regulated small municipal separate storm sewer system, the City is required to develop, implement, and enforce a stormwater management program. 40 C.F.R. § 122.34(a).

175.    The City has failed and continue to fail to develop and implement a compliant stormwater management program for the City of Albany, Oregon.

176.    Each and every day since at least December 21, 2010, on which the City has failed and continue to fail to develop and fully implement a complete and accurate stormwater management program, and to keep such stormwater management program on file together with all other required documentation, is a separate and distinct violation of the small municipal separate storm sewer system permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

## FOURTH CLAIM FOR RELIEF

### Violation of the Clean Water Act
### (Failure to Implement Required Minimum Control Measures)

177.    Willamette Riverkeeper incorporates by reference all preceding paragraphs.

178.    As a part a MS4 permit and as part of a stormwater management program, operators of regulated small MS4s are required by 40 C.F.R. § 122.34(b) to implement six minimum control measures:

a.    Public education and outreach on stormwater impacts (including a public education program to distribute educational materials to the community or conduct equivalent outreach activities about the impacts of stormwater discharges and the steps that the public can take to reduce pollutants in stormwater runoff);

COMPLAINT                                              33

     b.      Public involvement / participation (including providing opportunity for the public to participate in the development, implementation and review of the stormwater management program);

     c.      Illicit discharge detection and elimination, in the form of a program to detect and eliminate illicit discharges, as defined by 40 C.F.R. § 122.26(b)(2);

     d.      Construction site stormwater runoff control;

     e.      Post-construction stormwater management in new development and redevelopment; and

     f.      Pollution prevention / good housekeeping for municipal operations.

179.    The City has failed and continues to fail to implement the minimum control measures as required under 40 C.F.R. § 122.34(b).

180.    Each and every day since at least April 1, 2010, on which the City has failed to implement minimum control measures is a separate and distinct violation of the small MS4 permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

### FIFTH CLAIM FOR RELIEF

**Violation of the Clean Water Act
(Unauthorized Additions of Pollutants into Waters of the United States)**

181.    Willamette Riverkeeper incorporates by reference all preceding paragraphs.

182.    Raw sewage is a "pollutant" and contains pollutant[s] within the meaning of the Clean Water Act, 33 U.S.C. § 1362(6), and its implementing regulations at 40 C.F.R § 122.2.

183.    It is unlawful for the City to discharge pollutants from a point source into navigable waters unless the discharge is authorized by, and in compliance with, the terms and conditions of a NPDES permit. 33 U.S.C §§ 1311, 1342.

COMPLAINT                   34

184.    The City's NPDES Waste Discharge Permit only authorizes additions of pollutants to waters of the United States from authorized discharge points established in the City's NPDES Waste Discharge Permit, and only in conformance with all the requirements, standards, limitations, terms, and conditions set forth therein.

185.    The City's old and/or abandoned leaking pipes are "point sources" within the meaning of the Clean Water Act, 33 U.S.C. § 1362(14).

186.    On several occasions including but not limited to August 15, 2019 and October 14, 2015, and on a continuing and ongoing basis, the City has added pollutants into the Willamette River, or its tributaries, forks, and/or connected waters from the City's old and/or abandoned leaking pipes that are not permitted point sources. These additions were and are not authorized by the City's NPDES Waste Discharge Permit.

187.    The City has discharged, and will continue to discharge in the future, pollutants from its old and/or abandoned leaking pipes, including but not limited to those referenced in the preceding paragraph.

188.    On information and belief, Willamette Riverkeeper alleges that the City has taken insufficient remedial action to identify, stop, and prevent ongoing and future discharges from its old and/or abandoned leaking pipes, and these violations are therefore ongoing.

189.    Each unauthorized discharge from the City's old and/or abandoned leaking pipes constitutes a separate violation of 33 U.S.C. § 1311(a).

190.    These discharges have occurred since at least 2015, and upon information and belief, these discharges have occurred since before the City's NPDES Waste Discharge Permit was issued nearly twenty years ago, and at numerous times since the NPDES Waste Discharge Permit's issuance in 2000.

191.   These discharges are continuous and ongoing and are likely to continue to occur until the City identifies, repairs, replaces, and/or properly operates and maintains its old and/or abandoned leaking pipes.

### SIXTH CLAIM FOR RELIEF

**Violation of the Clean Water Act**
**(Discharges in Violation of the Terms and Conditions**
**of the City's NPDES Waste Discharge Permit)**

192.   Willamette Riverkeeper incorporates by reference all preceding paragraphs.

193.   It is unlawful for the City to discharge pollutants from a point source into navigable waters unless the discharge is authorized by a NPDES permit. 33 U.S.C §§ 1311, 1342.

194.   The City's overflow outfalls are "point sources" within the meaning of the Clean Water Act, 33 U.S.C. § 1362(14).

195.   The City's NPDES Waste Discharge Permit only authorizes discharges from specifically identified outfalls, and only in conformance with all the requirements, standards, limitations, terms, and conditions set forth therein.

196.   In the winter, overflows are prohibited from the City's emergency outfalls except during a storm event greater than a one-in-five-year, 24-hour storm event or its equivalent.

197.   On several occasions, including but not limited to December 20, 2014, January 17, 2015, December 7, 2015, December 17, 2015, November 25, 2016, February 5, 2017, February 16, 2017, February 21, 2017, October 22, 2017, December 18, 2018, February 24, 2019, April 7, 2019, and April 10, 2019 the City's waste discharge system had overflows from emergency outfall # 004 during winter storm events that did not exceed the one-in-five-year, 24-hour storm event.

COMPLAINT                                                           36

198. The City's sewage overflows are themselves pollutants in violation of the NPDES Waste Discharge Permit, and contain and are commingled with other pollutants.

199. "Pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. § 1362(6).

200. The City's outfall overflows violate the Clean Water Act because they were not authorized by the City's NPDES Waste Discharge Permit. 33 U.S.C. § 1311(a).

201. On information and belief, Willamette Riverkeeper alleges that the City has discharged, and will continue to discharge in the future, overflow containing and commingled with pollutants from its outfalls, inclusive of those referenced in paragraph 128.

202. On information and belief, Willamette Riverkeeper alleges that the City has taken insufficient remedial action to prevent future unpermitted discharges from its overflow outfalls, and these violations are therefore ongoing.

203. Each unauthorized discharge from the City's overflow outfalls constitutes a separate violation of 33 U.S.C. § 1311(a).

204. These discharges have occurred since at least 2015, and upon information and belief, these discharges have occurred since before the City's NPDES Waste Discharge Permit was issued nearly twenty years ago, and at numerous times since 2000.

205. These discharges are continuous and ongoing and are likely to continue to occur until the City is forced to repair, replace, and/or properly operate and maintain its overflow outfalls.

## SEVENTH CLAIM FOR RELIEF

**Violation of the Clean Water Act**
**(Inadequate Operation and Maintenance of Waste Discharge System)**

206.     Willamette Riverkeeper incorporates by reference all preceding paragraphs.

207.     The City's NPDES Waste Discharge Permit Schedule F § B "Operation and Maintenance of Pollution Controls" requires that "[t]he permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit. Proper operation and maintenance also includes adequate laboratory controls, and appropriate quality assurance procedures. This provision requires the operation of back-up or auxiliary facilities or similar systems which are installed by a permittee only when the operation is necessary to achieve compliance with the conditions of the permit." NPDES Waste Discharge Permit at 15.

208.     For decades, including the five years preceding the filing of this action, the City has failed to maintain all facilities and waste discharge systems under its ownership and control to achieve compliance with the effluent standards and limitations in its NPDES Waste Discharge Permit.

209.     For decades, including the five years preceding the filing of this action, the City has failed to operate its waste discharge system to minimize, eliminate, or prevent unpermitted discharges and/or unauthorized overflows, resulting in millions of gallons of unpermitted discharges and/or unauthorized overflows to the Willamette River and its tributaries, forks, and/or connected waters.

210.     The City's inadequate operation and maintenance of its waste discharge system, facilities, and equipment have caused, are causing, and will  continue to cause discharges of raw

COMPLAINT                                                    38

sewage, unauthorized overflows, blockages, flooding, inflow and infiltration problems, lapses or neglect of waste discharge system operation and maintenance, and inadequate sewer design.

211.    The City has violated its NPDES Waste Discharge Permit and the Clean Water Act by inadequately operating and maintaining its waste discharge system.

### EIGHTH CLAIM FOR RELIEF

**Violation of the Clean Water Act**
**(Failure to Collect, Analyze, and Report Water Quality Samples**
**for Unpermitted Discharges, Unauthorized Overflows, and from the City's MS4 System)**

212.    Willamette Riverkeeper incorporates by reference all preceding paragraphs.

213.    The City's NPDES Waste Discharge Permit Schedule F § D.5 "Reporting Requirements" states that "[t]he permittee shall report any noncompliance which may endanger health or the environment," and includes in the information which "shall" be reported within 24 hours, any "[v]iolation of maximum daily discharge limitation for any of the pollutants listed by the Director in this permit."

214.    Pollutants referenced in the City's NPDES Waste Discharge Permit include *E. coli* bacteria, pH, carbonaceous biochemical oxygen demand (CBOD5), total suspended solids, total chlorine residual, toxics, ammonia-N, temperature, flow, and nutrients.

215.    The discharge of pollutants in the City's NPDES Waste Discharge Permit can impact human health, aquatic life, and surface waters.

216.    The City's SSO Reports submitted to the Oregon DEQ demonstrate that the City exceedingly rarely conducted or reported any water quality sampling for SSO events.

217. The City's SSO Reports indicate that for just one of the City's several outfall sites, it had nearly 10,000,000 gallons of unauthorized pollutants discharged to waters of the United States between December 20, 2014 and April 10, 2019.

218. The City's SSO Reports indicate that Defendants did not conduct bacteria sampling of nearly 10,000,000 gallons of discharges from its sewage system.

219. Defendants did not sample for bacteria for at least, but not limited to, eleven of the following thirteen overflow events:

| Examples of City Overflow Events and Bacteria Sampling | | | |
|---|---|---|---|
| **Approximate Date of Overflow** | **Site** | **Estimated Gallons** | **Bacteria Samples Taken** |
| 12/20/14 | #004 Montgomery | 243,000 | Yes |
| 1/17/15 | #004 Montgomery | 198,000 | Yes |
| 12/7/15 | #004 Montgomery | 27,090 | No |
| 12/17/15 | #004 Montgomery | 1,652,000 | No |
| 11/25/16 | #004 Montgomery | 495,000 | No |
| 2/5/17 | #004 Montgomery | 599,000 | No |
| 2/16/17 | #004 Montgomery | 407,000 | No |
| 2/21/17 | #004 Montgomery | 9,000 | No |
| 10/22/17 | #004 Montgomery | 89,430 | No |
| 12/18/18 | #004 Montgomery | 830,000 | No |
| 2/24/19 | #004 Montgomery | 264,000 | No |
| 4/7/19 | #004 Montgomery | 68,500 | No |
| 4/10/19 | #004 Montgomery | 5,088,000 | No |
| **Total estimated gallons** | | **9,727,020** | |

220. It is the City's duty under the NPDES Waste Discharge Permit to report any noncompliance which may endanger health or the environment.

221. The City's failure to collect, analyze, or report any water quality samples for unpermitted discharges to waters of the United States means the City failed to report whether the

maximum daily discharge limitation for any of the pollutants was exceeded by nearly every unauthorized discharge event.

222.   Operators of municipal separate storm sewer systems are required to comply with reporting and recordkeeping pursuant to 40 C.F.R. § 122.34(g)(2) and the applicable small municipal separate storm sewer system permit.

223.   Reporting and recordkeeping requirements include: (1) keeping and making available to the public information used in the development of the stormwater management program, monitoring, reports, and data used in the development of the Notice of Intent for at least five years and (2) submitting an annual report to EPA.

224.   The City has failed and continues to fail to carry out the required reporting and recordkeeping pursuant to 40 C.F.R. § 122.34(g)(2) and the applicable small municipal separate storm sewer system permit for the City.

225.   The City has violated the Clean Water Act and NPDES Waste Discharge Permit by failing to collect, analyze, and report water quality data for its discharges, overflows, and its MS4 System.

## PLAINTIFF'S PRAYER FOR RELIEF

226.   Plaintiff Willamette Riverkeeper respectfully requests that this Court enter a judgment:

a.      Declaring that Defendants violated, and continue to violate, the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, for the unlawful additions and discharges of pollutants stemming from Defendants' unpermitted activities to waters of the United States;

b.      Declaring that Defendants violated, and continue to violate, the Clean Water Act, 33 U.S.C. § 1342, for their failure to timely seek coverage under a general or

individual small MS4 permit and failure to comply with all applicable requirements of that permit's NPDES program;

c.    Enjoining Defendants from adding pollutants from the City into surface waters of the United States, except as authorized by and in compliance with a general or individual small MS4 permit;

d.    Ordering Defendants to promptly and diligently take all actions necessary to meet the requirements of the Clean Water Act and Oregon Revised Statutes;

e.    Ordering Defendants to take appropriate actions to restore the quality of waters harmed by their additions and to remedy harm to the surrounding ecosystems and communities affected by Defendants' noncompliance with the Clean Water Act;

f.    Imposing civil penalties against Defendants for each of their violations of the Clean Water Act in the amounts authorized by the Clean Water Act;

g.    Retaining jurisdiction over this action to ensure the timely processing of Defendants' obligations under the Clean Water Act, until they come into permanent, consistent compliance with the Clean Water Act and comply with every order of this Court, including any judicial consent decree approved by this Court;

h.    Awarding Plaintiff Willamette Riverkeeper its costs, expenses, and reasonable attorney and expert witness fees associated with this litigation pursuant to 33 U.S.C. § 1365(d); and

i.    Granting Plaintiff Willamette Riverkeeper such additional and further relief as the Court deems just and appropriate.

Respectfully submitted this 13th day of October, 2020.

_s/ Elisabeth A. Holmes_
Elisabeth A. Holmes (OSB No. 120254)
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722 (No facsimile)
Email: eli@willametteriverkeeper.org

_s/ Bryan Telegin_
_s/ Zachary K. Griefen_
Bryan Telegin (OSB No. 105253)
Zachary K. Griefen (WSBA Bar No. 48608)*
Bricklin & Newman LLP
1424 4th Avenue, Suite 500
Seattle, Washington  98101
Tel. (206) 264-8600
Facsimile (206) 264-9300
Emails: telegin@bnd-law.com and griefen@bnd-law.com
_* Pro hac application to be filed promptly_

_Attorneys for Plaintiff_