**Complaint Attachment B**

**Second Notice Letter (January 31, 2020)**



403 SE Caruthers St., # 101
Portland, OR 97214
503.223.6418

January 31, 2020

**Via Certified Mail, Return Receipt Requested**

| | |
|---|---|
| City of Albany | Peter Troedsson, |
| City Hall | Individually and in his Capacity as City Manager |
| 333 Broadalbin Street, SW, 1st Floor | City of Albany |
| Albany, OR  97321 | 333 Broadalbin Street, SW, 1st Floor |
| | Albany, OR  97321 |

Re:     Notice of Intent to Sue under § 505 for Violations of the Clean Water Act's
        Small Municipal Stormwater (MS4) Provisions

Dear Sirs and Madams:

This letter is to provide you with notice that the nonprofit 501(c)(3) public interest organization Willamette Riverkeeper (the "Notifier" or "Willamette Riverkeeper") intends to file a citizen lawsuit against the City of Albany and its Manager, individually and in his official capacity (collectively "the City"), who are required to operate the City's small municipal separate stormwater system ("MS4") under and in compliance with the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. §§ 1251–1387. Upon expiration of the sixty (60) day statutory waiting period, Willamette Riverkeeper intends to file a civil action in federal district court in the District of Oregon seeking appropriate declaratory and equitable relief, civil penalties, and other relief. The lawsuit will allege that since April 1, 2010, the City has been obligated to apply for, obtain, operate under, and comply with an MS4 permit, that the City has failed to do so, and that such violations of the Clean Water Act have harmed and will continue to harm the Willamette River, Willamette Riverkeeper and its members and supporters. This letter constitutes notice pursuant to Section 505(b) of the CWA, 33 U.S.C. § 1365(b), and 40 C.F.R. Part 135 (the "Notice").

**Willamette Riverkeeper**

Willamette Riverkeeper is a "citizen" within the meaning of 33 U.S.C. § 1365(g). Willamette Riverkeeper and its 2,500 members and thousands of supporters have an interest which is adversely affected by the City's violations of the Clean Water Act alleged herein. Willamette Riverkeeper is a small 501(c)(3) not-for-profit organization with eight staff members. Willamette Riverkeeper was founded in 1996, and serves as the eyes, ears, and voice of the Willamette River. For more than 20 years, the organization's sole mission has been to protect and restore the Willamette River's water quality and habitat and the resources of the Willamette River Basin. Willamette Riverkeeper's work focuses on the health of the river's natural ecosystem, which is inseparable from the quality of life of the river's community, including many members and supporters of Willamette Riverkeeper, who live, work, and recreate in the

1

river (including the stretches of the river subject to this notice letter), its tributaries and side channels, and its surrounding watershed. Willamette Riverkeeper believes that a river with good water quality and abundant natural habitat for wildlife – including threatened species, and that is safe for fishing and swimming, is a basic public right. Willamette Riverkeeper engages in public outreach and education, advocacy with agencies, agency administrative processes, and where necessary, litigation.

**Person Responsible for Alleged Violations**

The City of Albany and its agents with operational control over the City of Albany are the persons, as defined by § 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), responsible for the violations alleged in this Notice. The City has owned and operated the City's stormwater system since at least April 1, 2010. Accordingly, the City is responsible for managing the City's stormwater in compliance with the Clean Water Act.

**Municipal Stormwater**

Stormwater is water from precipitation events that flows across the ground and pavement after it rains or after snow and ice melt. 40 C.F.R. § 122.26(b)(13). Stormwater runoff picks up pollutants, including chemicals, toxins, pathogens, nutrients, heavy metals, oils, and sediment that harms waterways. 40 C.F.R. § 122.30. Stormwater runoff transported through MS4s and discharged into water bodies elevates the pollutant concentrations and loadings in these waters and changes their natural hydrologic patterns. *Id.* Stormwater runoff changes the properties of surface waters, which can cause or contribute to surface water quality standards. *See* OAR 340-041. EPA regulations confirm that "[s]torm water runoff continues to harm the nation's waters. Runoff from lands modified by human activities can harm surface water resources in several ways including by changing natural hydrologic patterns and by elevating pollutant concentrations and loadings. Stormwater runoff may contain or mobilize high levels of contaminants, such as sediment, suspended solids, nutrients, heavy metals, pathogens, toxins, oxygen-demanding substances, and floatables." 40 C.F.R. § 122.30(c). The City's stormwater discharges shares the characteristics and impacts noted above.

**The City of Albany is Required to Obtain and Comply With MS4 Permit Requirements**

Since Congress passed the Clean Water Act in 1972, EPA has regulated stormwater. The purpose of EPA's stormwater program is to designate "additional sources that need to be regulated to protect water quality and to establish a comprehensive storm water program to regulate these sources." 40 C.F.R. § 122.30(b). In 1999, EPA finalized regulations for "Phase II" of its stormwater program (64 Fed. Reg. 68722 (Dec. 8, 1999)), requiring controls on stormwater discharges from small municipal stormwater systems. 40 C.F.R. § 122.34. EPA's Phase II program went into effect on February 7, 2000. 64 Fed. Reg. 68722. As of February 7, 2000, operators of regulated small MS4s "must seek coverage under a NPDES permit issued by your NPDES permitting authority…. [o]therwise your NPDES permitting authority is the EPA Regional Office." Oregon DEQ is authorized by EPA to administer the MS4 permit program in Oregon. 33 U.S.C. § 1342(b) and OAR 468B.050(1). On November 30, 2018 the Oregon Department of Environmental Quality, Oregon Environmental Quality Commission (EQC)

COMPLAINT ATTACHMENT B
PAGE 2 OF 10

issued a NPDES General Permit for Municipal Separate Storm Sewer Systems, Phase II General Permit ("Oregon MS4 General Permit"). Prior to the issuance of the Oregon MS4 General Permit on November 30, 2018, and since that time, Oregon has made individual MS4 Phase II permits an option for all permit registrants.[1]

The provisions of the Oregon MS4 General Permit include reductions in the discharges of pollutants from stormwater, and that permit registrants "not caus[e] or contribut[e] to an excursion of the applicable water quality standards as established in OAR 340-041." *See* Oregon MS4 General Permit at 8.

The Oregon MS4 General Permit authorizes certain communities in Oregon to discharge municipal stormwater to surface waters of the state and to waters of the United States pursuant to Clean Water Act § 402, 33 U.S.C. § 1342. The Oregon MS4 General Permit lists the City of Albany as a "New Registrant" subject to regulation. *See* MS4 General Permit at 5-6. Without coverage under the Oregon MS4 General Permit or an individual NPDES permit, the City of Albany is illegally operating a municipal separate stormwater system without a NPDES permit.

"Small" municipal stormwater systems are those serving a population of 50,000 people or more as determined by census data and whether a municipality is located in an urbanized area. *See* EPA, Stormwater Phase II Final Rule Fact Sheet 2.1 (EPA 833-F-00-003) Jan. 2000 (rev. June 2012).[2] In accordance with 40 C.F.R. § 122.32(a), the City is located in an urbanized area as determined by the latest Decennial Census by the Bureau of Census. As of the 2010 Census, the City had a population of 50,158; 2018 population estimates put the City's population at 54,453.[3]

Phase II municipalities must discharge stormwater to surface waters only pursuant to the authorizations and limitations provided by a NPDES permit, and must develop a Stormwater Management Plan that includes six minimum control measures. 40 C.F.R. § 122.43(b)(1)-(6).[4]

As alleged above, the City qualified as an MS4 in 2010, when the City's population surpassed 50,000. At all times since April 1, 2010 the City has had a duty to seek an MS4 permit, but the City has repeatedly failed and refused to apply for, obtain, or comply with a NPDES stormwater MS4 permit, either an individual permit or the Oregon DEQ MS4 General Permit. In fact, in lieu of seeking coverage under an individual MS4 permit, or applying for coverage under the MS4 General Permit, the City sued Oregon DEQ.[5] While the City may not wish to be

[1] *See, e.g.,* Oregon DEQ response to the City's comments on the MS4 General Permit, informing the public that "[i]f any permit registrant is unable to meet the terms and conditions of the general permit or does not wish to be regulated by this general permit, the permit registrant may apply for an individual permit in accordance with OAR 340-045-0030 or cease discharge." Oregon DEQ Response to Comment at 23-24 (Nov. 30, 2018) (https://www.oregon.gov/deq/FilterPermitsDocs/ms4-rtc.pdf).
[2] *See* https://www3.epa.gov/npdes/pubs/fact2-1.pdf
[3] U.S. Census Bureau (https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk).
[4] In summary, the six minimum control measures are: public education and outreach; public participation; illicit discharge detection and elimination; management of construction site runoff; management of post-construction site runoff; and good housekeeping in municipal operations. 40 C.F.R. § 122.34(b)(1)-(6).
[5] City of Albany v. Oregon Dept. of Env. Quality, et al., Linn Co. Docket No. 19-cv-04590 and Marion Co. Docket No. 19-cv-04553. The City has appealed the Circuit Court's November 6, 2019 Limited Judgment of Dismissal to the Oregon Court of Appeals (Docket No. A172799).

obligated under the Oregon DEQ MS4 General Permit, the City is still required to comply with federal law and has always had the option of applying for an individual MS4 permit. Willamette Riverkeeper contends that the City must either seek coverage under the MS4 General Permit or seek an individual MS4 Permit, and until the City obtains an MS4 permit, the City remains in violation of federal law.

**Activities Alleged to be Violations**

The City of Albany, Oregon is a regulated small municipal separate stormwater system ("MS4") pursuant to 40 C.F.R. § 122.26(b)(8) and § 122.26(b)(16). The City is subject to Oregon's MS4 permitting program, and is required to apply for, obtain, and comply with Oregon's MS4 General Permit or seek coverage under an individual permit. The City's unpermitted stormwater discharges to surface waters are unlawful without coverage under an individual or general NPDES permit.

The City constitutes a system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains), which are (1) designed or used for collecting or conveying stormwater that is not a combined sewer or publicly owned treatment works, and (2) owned or operated by a public body created pursuant to state law and having jurisdictional authority over stormwater. The City owns and operates a stormwater system designed to collect and transmit and discharge stormwater to prevent flooding or unwanted drainage patterns. MS4s typically include miles of collection point miles of stormwater piping and ditches, and many outfalls to receiving waterbodies. Since the 1984 to 1989 timeframe, the City has operated separate stormwater and waste water systems,[6] but as of 2010–2011 the City was still experiencing stormwater inflow into its sewer lines.[7]

The City's stormwater system consists of an estimated 200 miles of pipe and ditch, 175 known outfalls, approximately 4,300 catch basins or other types of inlets, and 150 publicly maintained stormwater quality facilities. The City provides public services to its residents, including collection, conveyance, and discharge of stormwater generated within the City. The City owns the collection and conveyance system used for this purpose. Stormwater is supposed to be collected and transmitted in accordance with the Oregon MS4 General Permit or an individual permit.

The City admits that "For most of Albany, stormwater flows to inlets, pipes, and ditches that carry it directly to local waterways *without any treatment at all*. Consequently, trash, debris, and harmful contaminants are also carried to the waterways"[8] (emphasis original).

The City also admits that "[a]s the City grows, past and future development of land (in the form of roads, parking lots, buildings, etc.) results in more and more impervious surface area. These surfaces prevent water from soaking into the ground and cause a significant increase in the volume of water that runs off the land when it rains. This runoff also contains pollution which

---

[6] City of Albany, Public Works Department, Capacity Management Operations and Maintenance Plan for the Wastewater Collection System ("CMOM") Plan at 8 (Oct. 2012).

[7] *Id*. at 10.

[8] City of Albany, "What is stormwater and why is it important?" *See* https://www.cityofalbany.net/sw-what-is

COMPLAINT ATTACHMENT B
PAGE 4 OF 10

affects the water quality of local waterways and ultimately the Calapooia and Willamette rivers. This pollution is the focus of state and federal stormwater regulations. In Albany, most stormwater flows from private property to a stormwater grate in the street where it drops into a pipe and is carried, untreated, to the nearest waterway. While the City's network of stormwater pipes is intended to be completely separate from the sanitary sewer system,"[9] design and maintenance realities of the City's stormwater and sewer systems suggest some cross-connections may exist, or ancient pipe problems may contaminate stormwater discharges with sewage.

Since at least April 1, 2010, the City of Albany has repeatedly failed and refused to apply for, obtain, or comply with a NPDES stormwater MS4 permit.

**Waters Affected**

The City transports its stormwater runoff and discharges it into the "Waters of the United States" within the meaning of § 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7) The City's stormwater system discharges to the Willamette River, the Calapooia River, and smaller streams and creeks that empty into the Willamette River. The City is located on the threshold between Middle and Upper Willamette River.

The waters of the Willamette River are designated critical habitat for federally-listed species under the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. Two ESA-listed species and their critical habitat occur in the mainstem of the Willamette River above Willamette Falls: Upper Willamette River (UWR) Chinook salmon and UWR steelhead. *See* Attachment 1 (NOAA Fisheries Critical Habitat maps for UW Chinook Salmon and UW Steelhead). Three additional ESA-listed species from the Lower Columbia River (LCR) region and their critical habitat also occur in the Willamette River below Willamette Falls: LCR Chinook salmon, LCR coho, and LCR steelhead. All five species are listed as "threatened" under the ESA. Individual fish from each of these species use critical habitat within the affected reaches to complete essential life history functions related to freshwater migration and rearing, and their ability to do so depends on the presence and quality of specific physical and biological features (PBFs) that include, but are not limited to, freedom from obstructions (which may include artificial noise or excessive sediment), floodplain connectivity, forage (adequate food quantity and quality), natural cover, and water quality.[10]

As the owner and operator of a regulated small MS4, the City is required to apply for, obtain, and comply with the requirements of a NPDES permit for small MS4s in order to discharge stormwater lawfully. Since the City has failed to take any of these steps, it is operating in violation of the Clean Water Act. Since at least April 1, 2010, the City of Albany has repeatedly failed and refused to apply for, obtain, or comply with a NPDES stormwater MS4 permit and is discharging stormwater to these waters without a permit.

---

[9] City of Albany, Stormwater Utility. See https://www.cityofalbany.net/sw-intro.
[10] *See* NOAA National Marine Fisheries Service Letter to the Oregon State Marine Board (Jan. 16, 2020).

COMPLAINT ATTACHMENT B
PAGE 5 OF 10

**Dates of Violations**

Each day on which the City operates its stormwater system without NPDES permit coverage for a small MS4 and without stormwater management program for a small MS4 is separate and distinct violation of § 310(a) and § 402 of the Clean Water Act, 33 U.S.C. § 1311 and § 1342.

Since at least April 1, 2010, when the City surpassed the 50,000 population mark, the City has discharged stormwater from its small municipal separate stormwater system without a permit for a small MS4, in violation of § 310(a) of the Clean Water Act, 33 U.S.C. § 1311(a), as well as failed to apply for, obtain, and comply with the requirements of a NPDES permit for a small MS4, in violation of § 402 of the Clean Water Act, 33 U.S.C. § 1342 and 40 C.F.R. §§ 122.32–122.36. The City's discharges in violation of the Clean Water Act occurred, at a minimum, during every precipitation event— including snow and ice melt events since at least April 1, 2010, continue to this day, and will continue for so long as the City owns and operates its stormwater system without an MS4 permit.

More than 70 percent of the soil underlying the City is characterized as "poorly drained" with low rates of percolation. With average annual precipitation of 42 inches, much of the rain that falls on the City cannot be absorbed by the soil and must be collected and conveyed by the public stormwater system. The City admits that "[s]ignificant portions" of its stormwater system are "failing," and "left unaddressed, more frequent street flooding, sink holes, and property damage should be anticipated."[11]

These violations are ongoing and continuous, and barring full compliance with the permitting requirements of the Clean Water Act, these violations will continue indefinitely.

**Relief Requested**

The City is liable for the above-described violations occurring prior to the date of this letter, and for every day these violations continue. Absent the City applying for, obtaining, and complying with an MS4 permit within the 60 day notice period, Willamette Riverkeeper intends at the close of the 60 day period to file a citizen lawsuit under § 505 of the Clean Water Act against the City, including its Manager both individually and collectively, for declaratory, injunctive, and remedial relief, and civil penalties for each day of each violation since the date the City was required to apply for and obtain an MS4 permit through the date of this letter, for all violations which occur subsequent to the date of this letter, plus costs, attorney and expert witness fees, and such other relief as may be appropriate. *See* 33 U.S.C. § 1319(d).

Pursuant to § 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §§19.2, 19.4, each separate violation of the Act subjects the City to a penalty of up to $53,484 per day for each violation that occurred after November 2, 2015 where penalties were assessed between January 15, 2018 and February 6, 2019, up to $53,833 per day for each violation that occurred after November 2, 2015 where penalties were assessed after February 6, 2019, and up to $55,800 per day for each violation

---

[11] City of Albany, "Operations and maintenance requirements." See https://www.cityofalbany.net/sw-operations

COMPLAINT ATTACHMENT B
PAGE 6 OF 10

where penalties were assessed on or after January 13, 2020. For the violations identified in this letter, including each and every day that the City has discharged without a required MS4 permit, Willamette Riverkeeper intends to seek the maximum possible penalty. Pending discovery, we see the City's total potential liability to be quite substantial. Lastly, Willamette Riverkeeper will seek to recover its litigation costs pursuant to 33 U.S.C. § 1365(d), including reasonable attorney and expert fees.

**Notifier**

The name, address, and telephone number of the person giving Notice of Intent to file a citizen lawsuit under the Clean Water Act is:

Travis Williams, Executive Director
Willamette Riverkeeper
403 SE Caruthers Street, Suite 101
Portland, Oregon 97214
Tel. (503) 223-6418

The names, addresses, and phone numbers of the counsel for the Notifier are:

Elisabeth A. Holmes, Staff Attorney
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722
Email: eli@willametteriverkeeper.org

Bryan Telegin
Bricklin & Newman, LLP
1424 4th Avenue, Suite 500
Seattle, WA 98101
Tel. (206) 264-8600
Email: telegin@bnd-law.com

**Conclusion**

During the 60 day notice period, Willamette Riverkeeper is willing to discuss effective remedies for the violations noted in this letter that may avoid further litigation. If you wish to pursue such discussions, please have your attorneys contact Elisabeth Holmes and Bryan Telegin within the next 20 days so that any negotiations may be completed before the end of the 60-day period. We do not intend to delay the filing of a complaint in federal court on this issue, or other pending issues we are discussing with you, if discussions are continuing at the conclusion of the 60 days.

Sincerely,

*s/ Elisabeth A. Holmes*
Elisabeth A. Holmes, Staff Attorney
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722
Email: eli@willametteriverkeeper.org

*s/ Bryan Telegin*
Bryan Telegin
Bricklin & Newman, LLP
1424 4th Avenue, Suite 500
Seattle, WA 98101
Tel. (206) 264-8600
Email: telegin@bnd-law.com

Enc. Attachment 1 (NOAA Fisheries Critical Habitat Maps)
Cc:

*Via U.S. Certified Mail, Return Receipt Requested*
Andrew R. Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Mail Code 1101A
Washington, D.C. 201460

*Via U.S. Certified Mail, Return Receipt Requested*
Richard Whitman, Director
Oregon Department of Environmental Quality
700 NE Multnomah Street, Suite 600
Portland, OR 97232-4100

*Via U.S. Mail*
City of Albany Members of City Council
Individually and in their Capacities as Members of
City Council
333 Broadalbin Street, SW, 1st Floor
Albany, OR 97321

*Via U.S. Mail*
Chris Hladick, Regional Administrator
U.S. EPA Region 10
1200 Sixth Avenue
Seattle, WA 98101

*Via U.S. Mail*
Sean M. Kidd, City Attorney
City of Albany, Oregon
c/o Delapoer Kidd, P.C.
260 Ferry Street, SW, Suite 202
Albany, OR 97321

Courtesy Copies
*Via Email and U.S. Mail*
Nina Englander (nina.englander@doj.state.or.us)
Scott J. Kaplan (scott.kaplan@doj.state.or.us)
Oregon Department of Justice for
Oregon Department of Environmental Quality
1162 Court St. NE
Salem, OR 97301-4096

*Via Email and U.S. Mail*
James Kincaid (jkincaid@cablehuston.com)
Kevin Kiely (gkkiely@cablehuston.com)
Laura Maffei (lmaffei@cablehuston.com)
Casey Nokes (cnokes@cablehuston.com)
Cable Huston
1455 SW Broadway, # 1500
Portland, OR 97201

8

COMPLAINT ATTACHMENT B
PAGE 8 OF 10



**Critical Habitat**
**Upper Willamette River Chinook Salmon**



Legend:
- Upper Willamette River Chinook Salmon Critical Habitat
- County Boundary

**Upper Willamette River Chinook Salmon Evolutionarily Significant Unit**
- Accessible - ESU Boundary
- Historical Watershed: Anthropogenically Blocked

COMPLAINT ATTACHMENT B
PAGE 9 OF 10

0   25 Miles



**Critical Habitat**
**Upper Willamette River Steelhead**



See Federal Register Notice for detailed description of critical habitat (70 FR 52630)
DOC-NOAA Fisheries-West Coast Region