**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| _____ ) | |
| WILLAMETTE RIVERKEEPER, an ) Oregon non-profit corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:20-cv-01760-AA |
| ) | |
| CITY OF ALBANY, ) et al. ) | **CONSENT DECREE** |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.    STIPULATIONS

The CITY OF ALBANY is an owner of the Albany-Millersburg Water Reclamation Facility, a publicly owned treatment works, including wastewater collection and transmission facilities, for the treatment of wastewater from discharges within the Cities of Albany and Millersburg ("Reclamation Facility").  The City of Albany operates the Reclamation Facility pursuant to National Pollutant Discharge Elimination System Permit No. 102024 ("NPDES Permit 102024") issued by the Oregon Department of Environmental Quality ("DEQ");

The CITY OF ALBANY owns and operates a small municipal separate storm sewer system ("MS4") for the collection and discharge of stormwater generated within the City of Albany and discharged to the City's MS4. On June 25, 2015, the City of Albany provided to the DEQ the notification form for permit coverage under the Municipal Separate Storm Sewer System Phase II National Pollutant Discharge Elimination System program;

PETER TROEDSSON is the City Manager for the City of Albany;

Plaintiff WILLAMETTE RIVERKEEPER is a 501(c)(3) nonprofit environmental organization;

1 - CONSENT DECREE

By letter dated August 27, 2019, Plaintiff WILLAMETTE RIVERKEEPER issued a notice of intent to sue alleging, among other things, that the City of Albany violated NPDES Permit 102024, the Federal Clean Water Act and the Oregon Revised Statutes 468B *et seq*., and implementing administrative rules regarding operation of its Reclamation Facility;

By letter dated January 31, 2020, Willamette Riverkeeper issued a second notice of intent to sue alleging, among other things, that the City of Albany violated the Federal Water Pollution Control Act regarding operation of its MS4;

On October 13, 2020, Willamette Riverkeeper filed an action under the citizen suit provisions of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq*. ("Complaint"), alleging that the Defendants CITY OF ALBANY ET AL. (collectively, "City of Albany") violated Sections 301(a) and 402 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1342, including violations alleged in the August 27, 2019 and January 31, 2020 notices of intent to sue;

Willamette Riverkeeper and the City of Albany intend for and agree that entry of this Consent Decree by the Court will resolve all claims alleged in the Complaint and the August 27, 2019 and January 31, 2020 notices of intent to sue. The Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses, including attorney and expert fees;

The CITY OF ALBANY denies any fault, wrongdoing, or liability for any and all claims and relief sought by Willamette Riverkeeper in this action;

The CITY OF ALBANY obtained coverage under the Oregon Department of Environmental Quality's Waste Discharge National Pollution Discharge Elimination System General Permit in June 2021 (the "Small MS4 NPDES General Permit");

The CITY OF ALBANY obtained coverage under NPDES Permit 102024 in November 2000 (the "Waste Discharge Permit"). In 2005, the City of Albany timely applied to the DEQ

2 - CONSENT DECREE

for renewal of NPDES Permit 102024, and NPDES Permit 102024 remains administratively extended and in full force and effect;

The CITY OF ALBANY developed a Wastewater Collection System Facility Plan in 2015. The City of Albany developed a Capacity, Management, Operation and Maintenance ("CMOM") program plan for its wastewater discharge system in 2012 and updated the CMOM program plan in 2020. The City of Albany represents that it invested upwards of $10,110,000 to construct the River Front Interceptor Wet Weather Lift Station and Force Main project in 2020 to address capacity constraints in the wastewater collection, transmission and discharge system;

The Parties recognize, without trial, adjudication or admission of facts or law regarding the claims and allegations set forth in Willamette Riverkeeper's notices of intent to sue or Complaint in this action, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter is fair, reasonable, and in the public interest, and that entry of this Consent Decree without further litigation is an appropriate resolution of this action;

NOW, THEREFORE, with the consent of the Parties, it is hereby ordered, adjudged, and decreed as follows:

## II.     JURISDICTION AND VENUE

1.     Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.     Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred within the CITY OF ALBANY,

3 - CONSENT DECREE

which is located  within this judicial district, and of which PETER TROEDSSON is the City

Manager.

### III.    PROCEDURAL POSTURE

3.    Within fourteen (14) days of the date of the Parties informing the Court of this

Consent Decree and requesting to stay all deadlines pursuant to Paragraph 22, WILLAMETTE

RIVERKEEPER shall file a Fed. R. Civ. P. 41 Notice of Dismissal with prejudice as to PETER

TROEDSSON,    INDIVIDUALLY    AND    IN    HIS    CAPACITY    AS    CITY

MANAGER. WILLAMETTE RIVERKEEPER agrees to not move for fees and/or costs against

PETER TROEDSSON in this matter.

### IV.    SMALL MUNICIPAL SEPARATE STORM SEWER SYSTEM ("SMALL MS4") SYSTEM AND PROGRAM

4.    By October 1, 2023, the CITY OF ALBANY will provide a draft Stormwater

Management Plan to WILLAMETTE RIVERKEEPER for review and comment, with

comments due back to the CITY OF ALBANY within sixty (60) days. The CITY OF

ALBANY will review WILLAMETTE RIVERKEEPER's input in good faith but is not

obligated to respond.

5.    By June 30, 2023, the CITY OF ALBANY will update the Albany Municipal

Code Title 12, the City's Engineering Design Standards (Division D and E) and Construction

Specifications, as well as the Albany Development Code to reflect the green infrastructure

requirements per section A.3.e. of the CITY OF ALBANY's Small MS4 NPDES General

Permit for Post-Construction Site Runoff for New Development and Redevelopment. For these

projects, construction activities for project sites discharging stormwater to the MS4 that create

or replace 5,000 square feet or more of impervious area are required to implement green

infrastructure to the maximum extent practicable and be designed to capture, infiltrate and treat

runoff up to the design storm. Projects that cannot meet the site performance and treatment

standards will be evaluated for Offsite Stormwater Mitigation as described below.

Redevelopment does not include maintenance activities as defined in the Small MS4 NPDES

General Permit. Examples of green infrastructure include pervious pavement, streetside

planters or swales, and onsite planters or swales, among others. For code and standards updates

that require the approval of City Council, the CITY OF ALBANY agrees to provide copies of

the documents going before Council thirty (30) days prior to the scheduled Council meeting

for WILLAMETTE RIVERKEEPER for review. The CITY OF ALBANY will review

WILLAMETTE RIVERKEEPER input in good faith but is not obligated to respond. For

purposes of this Consent Decree, the phrase "discharging stormwater to the MS4" shall include

stormwater runoff entering the MS4, directly or indirectly, and shall not be limited to point

source discharges.

6.      By December 31, 2022, the CITY OF ALBANY will develop a written

description and policy for an Offsite Stormwater Mitigation program as described in section

A.3.e.iv.D of the CITY OF ALBANY's Small MS4 NPDES General Permit. Offsite

stormwater mitigation may be used when site conditions (e.g., physical constraints,

topography, soil conditions) prohibit or make impracticable the use of on-site infiltration or

meeting the treatment requirements. This mitigation program includes a stormwater payment-

in-lieu program to fund off-site stormwater treatment facilities within the same sub-watershed

to the maximum extent practicable.

7.      By June 30, 2023, the CITY OF ALBANY will adopt a policy consistent with

the National Capital Region Transportation Planning Board Policy and incorporate it into the

City's Engineering Standards, Division E. Draft proposed policy language: All CITY OF

ALBANY financed and approved transportation projects shall, to the maximum extent

practicable, use approved green infrastructure such as swales, planters, and other engineered

vegetated Stormwater Quality Facilities to capture, filter, and/or treat stormwater runoff within the right-of-way, in a manner appropriate to the function and context of the facility.

8.      When designing projects which will replace existing stream crossing infrastructure, the CITY OF ALBANY shall assess the project for opportunities for stream restoration and/or stream daylighting, when feasible, to reduce flooding, improve water quality, and aquatic habitat.

9.      The CITY OF ALBANY shall provide written confirmation to WILLAMETTE RIVERKEEPER that it has satisfied the commitments in Paragraphs 4 through 7 within seven (7) days of the dates specified therein. The CITY OF ALBANY shall maintain written records of its assessments performed under Paragraph 8.

## V.      WASTE DISCHARGE SYSTEM

10.     By March 1, 2022, the CITY OF ALBANY will develop and implement a wastewater overflow sampling program for bacteria;

11.     By March 1, 2022, the CITY OF ALBANY will review its public notification system for wastewater overflows and establish a social media and text-alert based system for overflows;

12.     By March 1, 2022, the CITY OF ALBANY will develop and implement a written procedure for using a consistent source of rain gauge data as the primary source for rainfall information to describe rain events for each waste discharge system outfall, and to identify a backup rain gauge in case the primary rain gauge data is unavailable or the device is not functioning. Such criteria or guidance shall be used for all sanitary sewer overflow (SSO) reporting to the Oregon Department of Environmental Quality;

13.     On or before March 30, 2022, the CITY OF ALBANY will provide written confirmation to WILLAMETTE RIVERKEEPER that it has satisfied the commitments performed under Paragraphs 10 through 12.

14.     With the NPDES Permit 102024 renewal data that the CITY OF ALBANY will submit to DEQ (NPDES Permit 102024 is currently anticipated to be renewed in 2023), the CITY OF ALBANY will include a written review of the 2015 Collection System Facility Plan and confirm that its analysis of system capacity is current and accurate.

## VI.    SUPPLEMENTAL ENVIRONMENTAL PROJECTS

15.     In lieu of a penalty, within fourteen (14) days of the entry of this Consent Decree, the CITY OF ALBANY shall make payments totaling one hundred and twenty-five thousand dollars ($125,000.00) (the "Total SEP Payment") to the Calapooia Watershed Council, the North Santiam Watershed Council, and the South Santiam Watershed Council (the "SEP Recipients").  The following provides a summary of each SEP described in more detail in the letters attached as Attachment A:

a.  Calapooia Watershed Council.

The project is within the Periwinkle Creek system, which hosts a high diversity of native fish species, including Chinook salmon, Steelhead trout, cutthroat trout, Pacific lamprey and native sculpin, suckers and sandrollers.  The project cost estimate is $42,000 of SEP funding.  The project will include restoration efforts to create direct habitat and water quality improvements, and public outreach for community involvement and education. Direct restoration improvements include restoration of native shrub and tree populations along a two thousand linear feet segment of Periwinkle Creek located near Periwinkle Park.  Approximately 4 acres will be planted using SEP funds with native species selected for fast growth and drought tolerance.  The Calapooia Watershed Council will further use no more than fifty percent (50%) of the SEP funds for organization and facilitation of public outreach activities and the development of outreach materials for effective visualization and communication to help describe and promote Periwinkle Creek restoration efforts.

b.  South Santiam Watershed Council.

The project is located in the Thomas Creek subbasin of the South Santiam River.  The project is located on a parcel owned by the Avery Family within a reach that when restored would offer spawning and rearing habitat for Upper Willamette River spring Chinook and steelhead, as well as several migratory and resident lamprey and native fish species.  The project includes log placement and supplemental plantings in the riparian area adjacent to the log structures.  Approximately five (5) structures will be placed within the one kilometer reach.  The project will impact a greater area of stream than its footprint by engaging an island and side channel in addition to the instream effects both up and downstream of the project location.  South Santiam Watershed Council has secured additional fund for interpretive signs about watershed restoration

and salmon habitat which will be placed near the log structure placements.  The project will use $41,000 of SEP funds.

c.  North Santiam Watershed Council.

The project is located along Panther Creek, which is a tributary of the Little North Fork Santiam River and North Santiam River, a subbasin within which approximately ninety-four percent (94%) of mostly forested land burned during the 2020 wildfire.  The Little North Fork Santiam/North Santiam River is critical habitat for Upper Willamette River spring Chinook salmon and winter steelhead, as well as other species of concern.  The project will improve and restore a private road stream crossing and restore approximately one (1) acre of riparian habitat on both sides of the stream reach, and improve access to approximately two (2) miles of upstream habitat.  The project will improve flow conveyance and sediment and debris transport capacity and allow for year-round fish passage.  The riparian plantings will help stabilize soils and provide a vegetated buffer to improve water quality.  The project will use $42,000 of SEP funds.

Letters from the SEP Recipients agreeing to accept SEP funds according to the Consent Decree are attached hereto as Attachment A. Such payments shall be made within fourteen (14) days of the entry of this Consent Decree by the Court by checks payable and mailed to the SEP Recipients and shall bear the notation "Willamette Riverkeeper v. City of Albany, Clean Water Act Settlement." The CITY OF ALBANY shall notify WILLAMETTE RIVERKEEPER in  writing when the payment(s) are made and provide a copy of the check(s).

| SEP Recipient Name | Mailing Address |
| --- | --- |
| Calapooia Watershed Council | 351 North Main Street/PO Box 844, Brownsville, Oregon 97327 |
| North Santiam Watershed Council | 284 East Water Street, Stayton, Oregon 97383 |
| South Santiam Watershed Council | 4431 US-20, Sweet Home, Oregon 97386 |

16.    None of the SEP payments shall be disbursed to WILLAMETTE RIVERKEEPER.

/ / /

/ / /

/ / /

8 - CONSENT DECREE

## VII.    LIQUIDATED ATTORNEY FEES AND COSTS

17.    Within fourteen (14) days of the entry of this Consent Decree, the CITY OF ALBANY shall pay to WILLAMETTE RIVERKEEPER a total sum of one hundred and twenty-five thousand dollars ($125,000.00) as full and complete satisfaction of any claims that WILLAMETTE RIVERKEEPER may have for litigation expenses and costs, including attorneys' fees, expert fees and costs incurred in relation to this lawsuit and for costs to be incurred in conducting compliance monitoring. Such payment shall be made by check payable and mailed to BRICKLIN & NEWMAN, LLP, c/o Peggy Cahill, 1265 Xenia Street, Bellingham, Washington 98229.

## VIII.    EFFECT OF DECREE

18.    This Consent Decree is a full and complete settlement and release of all claims alleged in WILLAMETTE RIVERKEEPER's notices of intent to sue letters and the Complaint and all other Clean Water Act claims known or unknown existing as of the date of entry of this Consent Decree. WILLAMETTE RIVERKEEPER covenants not to sue and releases Defendants (and their subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief relating to, resulting from or alleging noncompliance with the Clean Water Act occurring prior to the date the Court enters this Consent Decree.  Notwithstanding anything to the contrary contained herein, WILLAMETTE RIVERKEEPER retains all rights necessary to enforce the terms of this Consent Decree, including by the filing of a lawsuit.

19.    Defendants covenant not to sue and release Willamette Riverkeeper (and its subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers and attorneys, including those who have held positions in the past) from

any and all claims, causes of action, or liability for damages, injunctive relief or other claim or relief relating to or resulting from Willamette Riverkeeper's notices of intent to sue letters and the Complaint and other Clean Water Act claims known or unknown existing as of the date of entry of this Consent Decree.

20.    Neither this Consent Decree, nor terms thereof, nor performance of the terms thereunder by Defendants shall constitute or be construed as an admission or acknowledgment by Defendants of the factual or legal assertions contained in this Consent Decree, in WILLAMETTE RIVERKEEPER's Complaint or in the notices of intent to sue, and Defendants retain the right to controvert any such assertions in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Consent Decree. Neither this Consent Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendants of any liability, or an admission of violation of any law, by Defendants or by their officers, directors, employees, representatives, agents, attorneys, consultants, successors, or assigns.

21.    WILLAMETTE RIVERKEEPER does not, by this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

## IX.    REVIEW AND TERM OF DECREE

22.    The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the U.S. Environmental Protection Agency ("EPA"). Therefore, upon signing of this Consent Decree by the Parties, the Parties shall

jointly inform the Court of the Consent Decree and request to stay all deadlines, and WILLAMETTE RIVERKEEPER shall serve copies of this Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

23.    Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Consent Decree.  This Consent Decree shall take effect on the date it is entered by this Court.  If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

## X.    MODIFICATION AND ENFORCEMENT OF DECREE

24.    This Consent Decree may be amended or modified only upon written agreement of the Parties and the approval of and entry by the Court.

25.    This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree. A precondition to any application to the Court under this paragraph is that the Parties must first seek to resolve the dispute themselves as follows: (a) the Party identifying a dispute must provide the other Party a written notice detailing the nature of the issue or dispute; and (b) within thirty (30) days of receipt of such notice, the Parties shall meet and confer regarding the issue or dispute.  If no resolution is reached at that meeting or within thirty (30) days of the written notice, whichever first occurs, either Party may file a motion with this Court to resolve the dispute.  If asked to award fees or costs in any action to enforce this Consent Decree, the Court shall apply the same standard applied by courts in awarding fees and costs under Section 505(d) of the Clean Water

Act, 33 U.S.C. §1365(d). If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of Oregon concerning their respective rights and obligations under this Consent Decree.

### XI.    MISCELLANEOUS PROVISIONS

26.    Entire Agreement. This Consent Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

27.    Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Consent Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier.  Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed to be given when (a) actually received if sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff WILLAMETTE RIVERKEEPER shall be sent to:

> Travis Williams, Executive Director
> Elisabeth Holmes, Staff Attorney
> Willamette Riverkeeper
> 403 SE Caruthers Street, # 101
> Portland, Oregon 97214
> Tel. (503) 223-6418
> Email: travis@willametteriverkeeper.org and eli@willametteriverkeeper.org

With a copy to:

12 - CONSENT DECREE

Bryan Telegin and Zachary Griefen
Bricklin & Newman LLP, LLP
c/o Peggy Cahill
1265 Xenia Street
Bellingham, WA 98229
Tel. (206) 264-8600
Email: telegin@bnd-law.com and griefen@bnd-law.com

Notices for Defendant CITY OF ALBANY shall be sent to:

Peter Troedsson
333 Broadalbin St. SW
Albany, OR 97321
541-917-7505
peter.troedsson@cityofalbany.net

With a copy to:

Sean Kidd
Delapoer Kidd PC
260 Ferry St. SW Ste 202
Albany, OR  97321
(541) 926-5505
sean@longdel.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

28.    Authorization.  Each person signing this Consent Decree represents and warrants that s/he has been duly authorized to enter into this Consent Decree by the Party on whose behalf it is indicated that the person is signing.

29.    Successors and Assigns.  This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

30.    Interpretation.  The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Consent Decree, but shall be construed as if all Parties prepared this Consent Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Consent Decree were negotiated at arm's length by the Parties hereto.

31.    Headings.  The section and paragraph headings contained in this Consent Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Consent Decree.

32.    Counterparts.  Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes.  Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

33.    Severability.  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

[Signature Page Follows]

14 - CONSENT DECREE

The signatories for the Parties certify that they are authorized by the party they represent

to enter into these Stipulations and this Consent Decree.

**WILLAMETTE RIVERKEEPER**

By: _____ Date: 3-7-22
    TRAVIS WILLIAMS, EXECUTIVE DIRECTOR AND RIVERKEEPER
    WILLAMETTE RIVERKEEPER


**BRICKLIN & NEWMAN, LLP**

By: _____ Date:_____
    BRYAN TELEGIN, OSB # 105253
    ATTORNEYS FOR PLAINTIFF WILLAMETTE RIVERKEEPER

**CITY OF ALBANY, OREGON**

By: _____ Date:_____
    PETER TROEDSSON
    CITY OF ALBANY

**PETER TROEDSSON**

By: _____ Date:_____
    PETER TROEDSSON

**CABLE HUSTON LLP**

By: _____ Date:_____
    G. KEVIN KIELY, OSB # 833950
    ATTORNEYS FOR DEFENDANT CITY OF ALBANY, OREGON AND PETER
    TROEDSSON


ENTERED and DATED this_____day of_____, _____.



_____
Honorable Ann L. Aiken
United States District Judge

The signatories for the Parties certify that they are authorized by the party they represent to enter into these Stipulations and this Consent Decree.

**WILLAMETTE RIVERKEEPER**

By: _____Date:_____
    TRAVIS WILLIAMS, EXECUTIVE DIRECTOR AND RIVERKEEPER
    WILLAMETTE RIVERKEEPER

**BRICKLIN & NEWMAN, LLP**

By: _____Date:  March 7, 2022
    BRYAN TELEGIN, OSB # 105253
    ATTORNEYS FOR PLAINTIFF WILLAMETTE RIVERKEEPER

**CITY OF ALBANY, OREGON**

By: _____Date:_____
    PETER TROEDSSON
    CITY OF ALBANY

**PETER TROEDSSON**

By: _____Date:_____
    PETER TROEDSSON

**CABLE HUSTON LLP**

By: _____Date:_____
    G. KEVIN KIELY, OSB # 833950
    ATTORNEYS FOR DEFENDANT CITY OF ALBANY, OREGON AND PETER
    TROEDSSON

ENTERED and DATED this_____day of_____, _____.

_____
Honorable Ann L. Aiken
United States District Judge

15 - CONSENT DECREE

The signatories for the Parties certify that they are authorized by the party they represent

to enter into these Stipulations and this Consent Decree.

**WILLAMETTE RIVERKEEPER**

By: _____Date:_____
    TRAVIS WILLIAMS, EXECUTIVE DIRECTOR AND RIVERKEEPER
    WILLAMETTE RIVERKEEPER


**BRICKLIN & NEWMAN, LLP**

By: _____Date:_____
    BRYAN TELEGIN, OSB # 105253
    ATTORNEYS FOR PLAINTIFF WILLAMETTE RIVERKEEPER

**CITY OF ALBANY, OREGON**

By: _____Date: 7 Mar 2622
    PETER TROEDSSON
    CITY OF ALBANY

**PETER TROEDSSON**

By: _____Date: 7 Mar 2022
    PETER TROEDSSON

**CABLE HUSTON LLP**

By: _____Date:_____
    G. KEVIN KIELY, OSB # 833950
    ATTORNEYS FOR DEFENDANT CITY OF ALBANY, OREGON AND PETER
    TROEDSSON


ENTERED and DATED this_____day of_____, _____.


                          _____
                          Honorable Ann L. Aiken
                          United States District Judge


15 - CONSENT DECREE

The signatories for the Parties certify that they are authorized by the party they represent

to enter into these Stipulations and this Consent Decree.

**WILLAMETTE RIVERKEEPER**

By: _____Date:_____
    TRAVIS WILLIAMS, EXECUTIVE DIRECTOR AND RIVERKEEPER
    WILLAMETTE RIVERKEEPER


**BRICKLIN & NEWMAN, LLP**

By: _____Date:_____
    BRYAN TELEGIN, OSB # 105253
    ATTORNEYS FOR PLAINTIFF WILLAMETTE RIVERKEEPER

**CITY OF ALBANY, OREGON**

By: _____Date:_____
    PETER TROEDSSON
    CITY OF ALBANY

**PETER TROEDSSON**

By: _____Date:_____
    PETER TROEDSSON

**CABLE HUSTON LLP**

By: _____Date: 3/7/2022____
    G. KEVIN KIELY, OSB # 833950
    ATTORNEYS FOR DEFENDANT CITY OF ALBANY, OREGON AND PETER
    TROEDSSON


ENTERED and DATED this_____day of_____, _____.


                                    _____
                                    Honorable Ann L. Aiken
                                    United States District Judge


15 - CONSENT DECREE